IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 14, 2017 Session

## STEVEN SANTORE, ET AL. V. KARLOSS STEVENSON, ET AL.

Appeal from the Circuit Court for Shelby County
No. CT-002966-14      Robert L. Childers, Judge

_____

No. W2017-01098-COA-R3-CV

_____

At issue in this personal injury action is whether the trial court erred by striking the defendant's affirmative defense that an unknown "John Doe" driver of an Averitt Express truck was comparatively at fault for the plaintiff's injuries. Relying on *Brown v. Wal-Mart Discount Cities*, 12 S.W.3d 785 (Tenn. 2000) and Tenn. Code Ann. § 20-1-119, the trial court struck the affirmative defense as to John Doe and Averitt Express upon the finding that the defendant failed to sufficiently identify John Doe so that the plaintiff may serve process on John Doe. We have determined the trial court's discretionary decision to strike the affirmative defense of comparative fault as to John Doe and Averitt Express was premature because the defendant was not afforded a reasonable opportunity to engage in pre-trial discovery to endeavor as to the identity of John Doe in sufficient detail for the plaintiff to serve process on John Doe. Therefore, we reverse and remand for further proceedings consistent with this opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded

FRANK G. CLEMENT JR., P.J., M.S. delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S and ARNOLD B. GOLDIN, J., joined.

John I. Houseal, Jr. and Brandon D. Pettes, Memphis, Tennessee, for the appellants, Cordova Concrete, Inc. and Karloss Stevenson.

Mark N. Geller and Glenn K. Vines, Memphis, Tennessee, for the appellees, Steven Santore and Stephanie Santore.

Martin W. Zummach, Southaven, Mississippi, for the appellee, Averitt Express, Inc.

**OPINION**

On November 7, 2013, Steven Santore was injured at a Love's Travel Stop in Memphis, Tennessee as he was walking through the fuel aisles on his way to the convenience store located at the travel stop. On July 8, 2014, Mr. Santore and his wife Mrs. Stephanie Santore ("Plaintiffs") filed suit against Cordova Concrete, Inc. and its employee, Karloss Stevenson, (collectively "CCI"), alleging Mr. Stevenson struck Mr. Santore while driving a CCI truck. CCI timely filed an answer in which it did not allege that a non-party was comparatively at fault.

At some point, not identified in the record, CCI learned of a 911 call that was made from the scene at the time of the accident. Thereafter, CCI issued a subpoena *duces tecum* to the City of Memphis to obtain the 911 recording. After a period of time passed, counsel for CCI realized that the city would not respond to a subpoena but it would respond to a public records request. As a result, on May 18, 2016, CCI made a public records request to the City of Memphis to obtain the 911 call records. On June 1, 2016, CCI obtained the records requested which consisted of an audio file of the 911 call and a Background Event Chronology.

The 911 recording did not reveal the identity of the caller or the identity of the vehicle that struck Mr. Santore. The Background Event Chronology identified, among other things, the time the call was made to the dispatcher, when emergency personnel were dispatched to the scene, and the phone number of the 911 caller but not the caller's name or address. Not to be deterred, after making repeated phone calls to the number listed in the Background Event Chronology, CCI was able to identify the 911 caller, an over-the-road truck driver who resided in another state. After coordinating an acceptable time, the caller's deposition was taken on August 29, 2016. During the deposition, the caller identified the vehicle that struck Mr. Santore as an Averitt tractor trailer truck; however, the caller was unable to identify the driver.

On September 20, 2016, which was more than two years after the complaint was filed but less than three months after obtaining the public records from the City of Memphis, CCI filed a motion to amend its answer to assert an affirmative defense of comparative fault against "John Doe" and Averitt Express, Inc. ("Averitt"). While Plaintiffs initially contested this motion, the parties agreed to allow the amendment pursuant to Tenn. R. Civ. P. 15.01 and submitted an agreed order to the court. The trial court granted the order, and it was entered on September 29, 2016. CCI then promptly filed an amended answer containing the above referenced affirmative defense. Shortly thereafter, Plaintiffs filed an amended complaint to add John Doe and Averitt as additional defendants.

On October 17, 2016, Averitt filed its Answer to Plaintiffs' amended complaint and a Motion to Dismiss. Eleven days later, and before a hearing could be held on the

prior motion, Averitt filed a Motion to Reconsider and Strike the Amended Answer of Defendants. In the latter motion, Averitt sought to strike Defendants' comparative fault affirmative defense as to both John Doe and Averitt.

On November 16, 2016, the trial court, relying on *Brown v. Wal-Mart Discount Cities*, 12 S.W.3d 785 (Tenn. 2000) and Tenn. Code Ann. § 20-1-119, ruled that the affirmative defense in CCI's amended answer against John Doe would be "stricken" due to the failure of CCI to identify John Doe to a degree sufficient to allow Plaintiffs to effectuate service upon him; however, the order did not strike the affirmative defense of comparative fault as to Averitt.

On November 29, 2016, Averitt filed a Renewed Motion to Dismiss Defendants' Allegation of Comparative Fault and Plaintiffs' Second Amended Complaint against Averitt. At the hearing on this motion, the trial court ordered that the affirmative defense of comparative fault as to Averitt be stricken from CCI's amended answer.

On January 17, 2017, the trial court entered an order modifying its November 16, 2016 order by "striking" CCI's affirmative defense claims of comparative fault and "striking" Plaintiffs' claims against both John Doe and Averitt. The trial court's order stated, "the answer [of CCI] did not identify 'John Doe' to a degree sufficient to allow Plaintiffs to effectuate service upon 'John Doe.'" As for Averitt, the court found that CCI's amended answer failed to state a "legal cause of action upon which relief may be granted." Based on these findings, the trial court ruled that Plaintiffs could not rely on Tenn. Code Ann. § 20-1-119 to allege vicarious liability against Averitt or direct negligence against John Doe. As we will discuss in more detail below, none of these orders "dismissed" Plaintiffs' claims against Averitt or John Doe.

On January 19, 2017, CCI filed a motion in the trial court for a Tenn. R. App. P. 9 interlocutory appeal which the trial court granted on February 16, 2017. Eight days later, on February 23, 2017, CCI filed an application for a Tenn. R. App. P. 9 interlocutory appeal with this court.[1] On March 13, 2017, we denied CCI's application and the case was remanded to the trial court.

---

[1] Pursuant to Tenn. R. App. P. 9, an appeal by permission may be taken from an interlocutory order of a trial court "only upon application and in the discretion of the trial and appellate court." While neither controlling nor fully measuring the discretion of the trial court or the appellate court, the reasons that may be considered may include the need "to prevent needless, expensive, and protracted litigation," as well as "the probability of reversal, and whether an interlocutory appeal will result in a net reduction in the duration and expense of the litigation if the challenged order is reversed." Tenn. R. App. P. 9. Nevertheless, as Tenn. R. App. P. 9 expressly states: "Failure to seek or obtain interlocutory review shall not limit the scope of review upon an appeal as of right from entry of the final judgment."

Following this court's discretionary decision to deny the application for a Rule 9 interlocutory appeal, CCI filed a Tenn. R. Civ. P. 60.01 motion in the trial court seeking to modify the January 17, 2017 order. The purpose of the motion was to obtain the entry of a final judgment as to all claims by or against Averitt and John Doe.[2] The trial court granted the motion to modify and in an order entered on May 19, 2017, which the trial court designated as a final judgment pursuant to Tenn. R. Civ. P. 54.02, the trial court granted Averitt's Renewed Motion to Dismiss and amended its January 17, 2017 order pursuant to which it dismissed all claims against Averitt and John Doe.

On May 31, 2017, CCI initiated this appeal by filing its Tenn. R. App. P. 3 notice of appeal from the final judgment entered on May 19, 2017.

## ANALYSIS

### I. TIMELINESS OF APPEAL – SUBJECT MATTER JURISDICTION

Plaintiffs and Averitt (collectively, "Appellees") contend that this court lacks subject matter jurisdiction over this Tenn. R. App. P. 3 appeal because the appeal is untimely. This issue was first raised with this court in Appellees' motions to dismiss this appeal prior to oral arguments. We denied the motions and Appellees have provided no new facts or additional authorities that change our decision.

Although a "final judgment" is not a prerequisite to a Rule 9 interlocutory appeal, as distinguished from an appeal as of right pursuant to Tenn. R. App. P. 3, in this court's 2017 ruling on CCI's application for a Tenn. R. App. P. 9 interlocutory appeal it was determined that the January 17, 2017 order, which was the subject of that appeal, was not a final judgment.[3] As our Supreme Court explained in *In re Estate of Henderson*:

---

[2] Tenn. R. Civ. P. 54.02 states:

When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

[3] *See* Court of Appeals Docket No: W2017-00362-COA-R9-CV.

- 4 -

A final judgment is one that resolves all the issues in the case, "leaving nothing else for the trial court to do." *State ex rel. McAllister v. Goode*, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997). In contrast, an order that adjudicates fewer than all of the claims, rights, or liabilities of all the parties is not final, but is subject to revision any time before the entry of a final judgment. Tenn. R. App. P. 3(a). Such an order is interlocutory or interim in nature and generally cannot be appealed as of right. *Id*. However, there is a mechanism, found in Rule 54.02 of the Tennessee Rules of Civil Procedure, by which a party may appeal an order that adjudicates fewer than all of the claims, rights, or liabilities of fewer than all the parties. Rule 54.02 provides as follows:

> When more than one claim for relief is present in an action ... or when multiple parties are involved, the court ... may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties **only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment**. In the absence of such determination and direction, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

(Emphasis added). Thus, **Rule 54.02 requires, as a prerequisite to an appeal as of right of an interlocutory order, the certification by the trial judge that the judge has directed the entry of a final judgment as to one or more but fewer than all of the issues of the parties, and that the court has made an express determination that there is no just reason for delay**. *Stidham v. Fickle Heirs*, 643 S.W.2d 324, 325 (Tenn. 1982). Such certification by the trial court creates a final judgment appealable as of right. *Id*.

*In re Estate of Henderson*, 121 S.W.3d 643, 645-46 (Tenn. 2003) (emphasis added).

As this court stated with clarity in the order dismissing the application for permission to appeal, the interlocutory order appealed from did "not explicitly dismiss the matters as to John Doe or Averitt Express, Inc." Furthermore, we expressly noted that the order appealed from did not "make the finding required by Rule 54.02 [of the Tennessee Rules of Civil Procedure] requiring 'an express determination that there is no

just reason for delay and upon an express direction for the entry of judgment.'" In this Rule 3 appeal the Appellees have failed to identify any additional facts or authority that would change our decision.

It is also significant that our 2017 order denying the Rule 9 application for permission to appeal constituted the law of the case. *See Memphis Pub. Co. v. Tennessee Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998) ("[U]nder the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal.") In that order, we determined that the order appealed–the trial court's January 17, 2017 order–was not a final judgment.

For the foregoing reasons, we have subject matter jurisdiction over this Rule 3 appeal.[4]

## II. COMPARATIVE FAULT ATTRIBUTED TO JOHN DOE AND AVERITT

Appellees raise numerous issues with the trial court's orders in regard to CCI's fourth affirmative defense.[5] We have determined, however, that we need only address

---

[4] Although it is not raised as a separate issue, in their argument concerning subject matter jurisdiction Appellees contend the trial court erred in granting CCI relief under Tenn. R. Civ. P. 60.01 because the motion should have been based on Tenn. R. Civ. P. 60.02. The order at issue–the trial court's January 17, 2017 order–was not a final judgment; to the contrary, it was an interlocutory order that was subject to amendment without reliance on Tenn. R. Civ. P. 60. As a result, we need not address this contention.

[5] The parties list the following as the issues that are relevant to comparative fault:

Issues raised by Stevenson and CCI:

1. Whether Defendants Cordova Concrete, Inc. and Karloss Stevenson properly pled the comparative fault of the "John Doe" operator of the Averitt Express tractor trailer where the operator is alleged to be an employee of Averitt operating the subject tractor trailer in the course and scope of his employment.
2. Whether Defendants may plead the comparative fault of alleged principal/employer Averitt under a vicarious liability theory where the alleged employee/agent John Doe, operator of the Averitt tractor trailer at issue, could not be sufficiently identified, at time of pleading, to allow Appellees to plead and serve process on such person pursuant to Tenn. Code Ann. § 20-1-119.

Issues raised by Steven and Stephanie Santore:

1. Whether, under Tenn. Code Ann. § 20-1-119, Plaintiffs have stated a claim upon which relief can be granted in their amended complaint against John Doe?

(continued…)

one: whether the trial court erred in striking John Doe from CCI's fourth affirmative defense.

Averitt moved to strike the affirmative defense of comparative fault as to John Doe pursuant to Tenn. R. Civ. P. 12.06 on the basis that CCI's identification of John Doe was so insufficient that Plaintiffs would not be able to plead or serve process on John Doe. The purposes of a motion to strike under Tenn. R. Civ. P. 12.06 were discussed at length in *Doe v. Mama Taori's Premium Pizza, LLC*, No. M1998-00992-COA-R9-CV, 2001 WL 327906, at *1 (Tenn. Ct. App. April 5, 2001). Relevant here, is the purpose "to object to insufficient defenses," and the purpose "to enforce Tenn. R. Civ. P. 8.05's requirement that pleadings be simple, concise and direct." *Id*. at *2 (citing Tenn. R. Civ. P. 12.06(2) & (3); other citations omitted). "When used for their intended purpose, these motions help the parties and the courts avoid the time and money wasted litigating spurious issues by dispensing with these issues prior to trial." *Id*. (citations omitted). These principles notwithstanding, "[d]espite their salutary purpose, motions to strike are not favored because the remedy they offer is drastic and because they are frequently used simply as a dilatory tactic." *Id*. (citations omitted).

> A Tenn. R. Civ. P. 12.06 motion may be used to test the "legal sufficiency" of an affirmative defense. *Usrey v. Lewis*, 553 S.W.2d 612, 614 (Tenn. Ct. App. 1977). To succeed with a Tenn. R. Civ. P. 12.06 motion, the moving party must show both that the challenged claim or defense does not involve a question of fact or law on which the non-moving party can succeed and that failure to strike the challenged claim or defense will be prejudicial to the moving party. *SEC v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999); *Abrams v. Lightolier, Inc*., 702 F. Supp. 509, 511 (D.N.J. 1988); 5A *Federal Practice and Procedure* § 1380.

. . .

> Whether a particular defense is insufficient for the purposes of a Tenn. R. Civ. P. 12.06 motion depends on the nature of the claim. 5A *Federal Practice and Procedure* § 1381. An affirmative defense is insufficient if, as a matter of law, the defense cannot succeed under any circumstance or if it

---

2. Whether, under Tenn. Code Ann. § 20-1-119, Plaintiffs have stated a claim upon which relief can be granted in their third amended complaint against Averitt?

Issue raised by Averitt:

1. Averitt submits that the issue is whether or not the decision of Judge Childers to grant Averitt's Motion to Strike, and thus, in effect, to deny CCI's Motion to Amend their Answer to allege comparative fault against Averitt and a "John Doe" driver was an abuse of discretion.

bears no possible relationship to the matters in controversy. *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953); *FSLIC v. Burdette*, 696 F. Supp. 1183, 1186 (E.D. Tenn. 1988). A motion to strike a defense should not be granted if there is any doubt that the challenged claim or defense might raise an issue of fact or law, *Nwakpuda v. Falley's, Inc.*, 14 F. Supp. 2d 1213, 1215 (D. Kan. 1998); *Sunshine Cellular v. Vanguard Cellular Sys., Inc.*, 810 F. Supp. 486, 499-500 (S.D.N.Y. 1992); 2A *Moore's Federal Practice* ¶ 12:21[2], or if the insufficiency of the defense is not readily apparent. 5A *Federal Practice and Procedure* § 1381, at 678.

*Id*. at *3.

"Trial courts have considerable discretion with regard to granting Tenn. R. Civ. P. 12.06 motions." *Id*. (citations omitted). Accordingly, we "review decisions regarding Tenn. R. Civ. P. 12.06 motions using the deferential 'abuse of discretion' standard of review." *Id*.

The abuse of discretion standard does not permit reviewing courts to substitute their discretion for that of the trial court. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Nevertheless, the abuse of discretion standard of review does not immunize a lower court's decision from any meaningful appellate scrutiny. *Id*.

Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision.

.   .   .

[R]eviewing courts should review a [trial] court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions. When called upon to review a [trial] court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the [trial] court's legal determinations de novo without any presumption of correctness.

*Id*. at 524-25 (internal citations omitted).

Here, the trial court initially granted Averitt's motion, in part, by striking John Doe, but not Averitt, from CCI's fourth affirmative defense alleging comparative fault. In reaching this decision, the trial court relied on *Brown v. Wal-Mart Discount Cities*, 12 S.W.3d 785 (Tenn. 2000) and Tenn. Code Ann. § 20-1-119. Applying the holding in *Brown* "that a defendant may not attribute fault to a non-party who is not identified sufficiently to allow the plaintiff to plead and serve process on such person," to the fact that CCI's "identification" of John Doe was so vague and deficient that Plaintiff could not serve process on John Doe, the trial court ruled that the affirmative defense should be stricken. Although we agree that the identification of John Doe was insufficient, we have determined that the decision to strike the affirmative defense before CCI had a reasonable opportunity to discover the identity of John Doe was premature.

We begin by reviewing the Supreme Court's ruling in *Brown*. The plaintiff in *Brown* was injured after slipping on ice and water that had been spilled in the defendant's store. *Brown,* 12 S.W.3d at 785. The issue in *Brown* arose from the defendant's argument that the jury should have been allowed to consider the fault of the unidentified tortfeasor who was responsible for spilling the ice and water. *Id*. The trial judge initially allowed the jury to consider the fault of the unidentified tortfeasor, and the jury assigned 30% of fault to the defendant and 70% to the unidentified tortfeasor. *Id*. However, upon plaintiff's motion for a new trial, "the trial judge issued an order assigning 100% of plaintiff's damages to defendant, finding that it had erred in allowing the jury to assign fault to the unidentified tortfeasor." *Id*. The trial court denied plaintiff's motion for a new trial and held defendant liable for the entire judgment. *Id.*

The case was appealed and we affirmed the trial court's judgment, "emphasizing the jury's finding that the defendant was negligent and holding that the defendant should not be able to attribute any of the fault to an unidentified nonparty unless the defendant can prove the 'existence' of the nonparty 'whose fault contributed to the plaintiff's injuries by clear and convincing evidence.'" *Id*. Our Supreme Court reviewed the case and determined that a defendant "may not attribute fault to a nonparty who is not identified sufficiently to allow the plaintiff to plead and serve process on such person pursuant to Tenn. Code Ann. § 20-1-119 (1994 & Supp. 1999), even if the defendant establishes the nonparty's existence by clear and convincing evidence." *Id* at 786. In analyzing the issue of unidentified nonparty comparative fault, the Supreme Court commented:

> Rule 8.03 is a rule of pleading which allows a defendant to allege that a nonparty contributed to the plaintiff's damages, ultimately allowing the plaintiff to plead and serve, and the trier of fact to assign fault to, the comparative tortfeasor alleged in defendant's answer. Rule 8.03 contemplates that at the pleading stage, either the identity or a description of another potential tortfeasor is sufficient to initiate discovery. *Cf. George*

*v. Alexander*, 931 S.W.2d 517, 521-22 (Tenn. 1996) (reasoning that a defendant intending to argue that a nonparty was the cause in fact of plaintiff's injury must identify or describe the nonparty in strict adherence to Tenn. R. Civ. P. 8.03 because a plaintiff should be afforded timely notice of the other potential tortfeasor). Tennessee's case law and statutory law both indicate, however, that when *pre-trial discovery* fails to identify the "described" comparative tortfeasor alleged in defendant's answer, the defendant should not be allowed to argue, and the trier of fact should not be permitted to make a determination, that a percentage of fault should be attributed to the unidentified nonparty.

*Id.* at 787 (emphasis added). As the court in *Brown* went on to explain, "[e]vidence of the existence of a phantom tortfeasor is not sufficient identification for purposes of pleading and serving process." *Id*. at 788. "[U]nless the nonparty is identified sufficiently to allow the plaintiff to plead and serve process on such person pursuant to Tenn. Code Ann. § 20–1–119, the trial court should not permit the attribution of fault to the nonparty." *Id*.

Here, the trial court correctly found that CCI failed to sufficiently identify John Doe so that Plaintiffs could plead and serve process on him; however, we have concluded that CCI was not afforded a reasonable opportunity to engage in pre-trial discovery to sufficiently identify John Doe. Admittedly, more than two years had passed since the complaint was filed; however, the record reveals that the delay was not the result of a lack of diligence on the part of CCI.

As noted earlier, although the record does not reveal when CCI learned of the 911 call, in April or May of 2016, CCI issued a subpoena to the City of Memphis to obtain a recording of the 911 call. When that process proved to be unsuccessful, CCI made a public records request, and CCI obtained those records on June 1, 2016. Thereafter, and because the identity of the caller was not revealed in the recording or the documents provided by the city, CCI made numerous calls to the phone number identified in the records to locate the caller and to take his deposition.

After speaking with the 911 caller, CCI was able to schedule his deposition for August 29, 2016. Based on the testimony of the 911 caller, CCI promptly amended it answer to attribute fault against John Doe and Averitt on September 29, 2016. Thus, in approximately four months, CCI obtained a recording of the 911 call, identified and located the 911 caller, deposed him, discovered that Plaintiff was allegedly struck by an Averitt truck that was driven by an unknown driver, and filed its amended answer in which it attributed fault to Averitt and John Doe.

Relying on CCI's amended answer and Tenn. Code Ann. § 20-1-119, Plaintiffs filed an amended complaint on October 7, 2016, in which they added John Doe and Averitt as defendants. On November 11, 2016, CCI propounded its First Set of

Interrogatories, Requests for Production of Documents, and Requests for Admissions to Averitt in order to discover, *inter alia*, the identity of Averitt's driver, John Doe. In the interim, on October 17, 2016 and October 28, 2016, Averitt filed separate motions to strike the affirmative defenses asserted by CCI and to dismiss John Doe and Averitt. The trial court then entered an order striking CCI's affirmative defense and dismissing John Doe and Averitt. This all occurred without Averitt providing any responses to the discovery propounded by CCI.

Based on the foregoing time lines, CCI contends the trial court deprived it of the opportunity to conduct pre-trial discovery of Averitt in order to obtain information concerning the identify of John Doe, which would hopefully provide sufficient details to afford Plaintiff the opportunity to serve process on John Doe. We agree. Considering the foregoing, we believe the trial court erred by striking CCI's affirmative defense of comparative fault and dismissing Plaintiffs' claims against John Doe and Averitt without affording CCI a reasonable opportunity to conduct discovery concerning, *inter alia*, the identify of John Doe.

The foregoing notwithstanding, Averitt insists that CCI's reliance on the opportunity to conduct discovery is misplaced. Averitt submits that the issue is whether the trial court's decision "to grant Averitt's Motion to Strike, and thus, in effect, to deny CCI's Motion to Amend their Answer to allege comparative fault against Averitt and a 'John Doe' driver was an abuse of discretion."

Averitt insists the trial court "found" that CCI's failure to discover the identity of and to depose the 911 caller constituted an unfair delay. As Averitt puts it, during the November 10, 2016 hearing on Averitt's motions, the trial court "found an unfair delay between the date of the accident; filing of the lawsuit; and the attempted amendment to add an unnamed, unknown Defendant." CCI counters by denying that the trial court made this a ground or basis for its ruling as vehemently as Averitt asserts that it did. We have determined that Averitt's reliance on the trial court's statement from the bench is unfounded or, at best, misplaced. Upon a close review of the record, the delay in identifying and deposing the 911 caller does not appear to be the reason or a ground for the trial judge's ruling because the transcript from the hearing was neither incorporated by reference in the order at issue nor did the order mention "unfair delay."

To begin, as CCI notes in its reply brief, while the trial court initially expressed frustration with the fact that the case had been pending for two years before CCI asserted the affirmative defense of comparative fault against John Doe and Averitt, once the trial court heard the reasons for the delay, as explained by John Houseal, counsel for CCI at the November 10, 2016 hearing, the court appeared satisfied with the explanation of why CCI did not know that a 911 caller had identified the vehicle that struck Plaintiff as an Averitt truck. This is evident from the trial court's statement immediately following counsel's explanation: "Counsel, forgive me, I now understand a little bit more about

why there was some delay, given the injuries of the Plaintiff. I didn't mean to be critical if I appeared to be critical of anybody, Mr. Houseal." The relevant colloquy between the trial judge and counsel for CCI reads as follows:

> THE COURT: I want you to find it. I'm not real pleased about the Consent Order being entered adding another party at this late date. I had the case set for trial in October. Then you all, September 29th, entered an order by consent of you two bringing in somebody else in three years after the accident. I think that's way late. So I want you to tell me why I shouldn't undo this Consent Order and keep you from amending your answer to join [Averitt]. I think it's a basic matter of fairness here. How is Averitt going to investigate at this late date? It's prejudice to this proposed Defendant. That's my concern in this case. You tell me why there's not prejudice to them by you all waiting so long, and you can't even tell me when you got the name.

In the discussion that followed the trial court asked counsel for CCI to justify the delay in asserting the affirmative defense of comparative fault:

> MR. HOUSEAL:  We can provide those dates. The sequence, Your Honor, on 911 is we issued a subpoena originally, and they don't respond to subpoenas, as we found out.
> THE COURT:  "They" the Government?
> MR. HOUSEAL:  911 people.
> MR. PETTES:  The City of Memphis.
> THE COURT:  Whatever it's called.
> MR. HOUSEAL:  Whatever it's called is right. Because we issued a subpoena and we keep waiting, and they don't answer us. So we file a request for information, and we get it. We get the recording. Well, the recording doesn't identify the party. So what we did then was we actually got the documents. When you get the documents and read through it, they don't identify. But there was one phone number that was unknown and so we start tracking that. So from a diligence standpoint we think we've done a pretty good job. We ended up having to track that phone number down, and when we do we started trying to call it, and call it, and call it. When we finally get in touch with that individual, we asked him if he happened to be the 911 caller and he tells us that he was. So we interview him.
> THE COURT:  When was that?
> MR. HOUSEAL:  It's shortly before this deposition.
> THE COURT:  You don't have that information in your file?
> MR. HOUSEAL:  Well, we have to get it. I mean, today I didn't come prepared to address that question.
> THE COURT:  Well, let's recess then, and I want that information.

- 12 -

MR. HOUSEAL:  We'd be glad to provide it. But I don't want Your Honor to think that we were asleep at the switch. Because as soon as we get this kind of information, we're absolutely going to reveal it. This man -- we don't have control of him. He's not even in this State. At that time he's a truck driver so you can imagine trying to track that down. So we did. And that's how we came up with him, and we shared that information with the Plaintiffs when we got it. We shared the recording with him as well. So that's how we tracked him down. When we tracked him down, the 911 recording doesn't identify Averitt. So nobody knows until we depose that fella about whether he believes it's an Averitt truck or not. That's the timeline on this. That piece of it.

.   .   .

MR. HOUSEAL: . . . Your Honor asked the date about how soon we moved on this, and it was within three weeks of our discovery of that information. So we just checked on that. To answer Your Honor on that, we moved as expeditiously as possible on it. I have the deposition, but I didn't bring it today, that addresses what the scope is. I'm not sure that's really our issue. Averitt is identified . . . by the witness. Whether or not Mr. Zummach can prove that the witness is wrong or if he didn't accurately identify the trailer or tractor, that's a matter of proof, it seems to me. The requirements that 119(a) requires of us is to identify, as soon as we have information, anyone that could have caused or contributed to the injury -- which I thought we had done and still think that we have done -- so it gives the Plaintiffs the opportunity to do what they did.

.   .   .

THE COURT: . . . Counsel, forgive me, I now understand a little bit more about why there was some delay, given the injuries of the Plaintiff. I didn't mean to be critical if I appeared to be critical of anybody, Mr. Houseal.

Based on the foregoing, and having considered the relevant facts and authorities, we reverse and remand with instructions to reinstate the affirmative defenses asserted by CCI in which it attributes comparative fault against John Doe and Averitt, to reinstate Plaintiffs' amended complaint in which it asserts claims against John Doe and Averitt, and to afford the parties a reasonable period of time in which to conduct discovery concerning, *inter alia*, the identify of John Doe.

**IN CONCLUSION**

The judgment of the trial court is reversed and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against Averitt Express, Inc.

_____
FRANK G. CLEMENT JR., P.J., M.S.