# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

FILED

September 17, 1997

Cecil W. Crowson
Appellate Court Clerk

STATE OF TENNESSEE, ex rel.,      )
SHERRY McALLISTER,                )
                                  )
        Plaintiff/Appellee,       )
                                  )   Sumner Circuit
                                  )   No. 3846-C
VS.                               )
                                  )   Appeal No.
                                  )   01A01-9510-CV-00452
DANNY GOODE,                      )
                                  )
        Defendant/Appellant.      )


APPEAL FROM THE CIRCUIT COURT FOR SUMNER COUNTY
AT GALLATIN, TENNESSEE

THE HONORABLE THOMAS GOODALL, JUDGE


For the Plaintiff/Appellee:                 For the Defendant/Appellant:

John Knox Walkup                            Anita M. Holden
Attorney General and Reporter               Lebanon, Tennessee

James H. Tucker, Jr.
Assistant Attorney General


## AFFIRMED IN PART; REVERSED IN PART AND REMANDED


WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal involves a non-custodial parent's liability for a sizeable child support arrearage accumulated over eight years. The State of Tennessee petitioned the Circuit Court for Sumner County to require the non-custodial parent to pay the arrearage and to find the non-custodial parent in contempt. The non-custodial parent responded by requesting a reduction in his child support obligation and by asserting that he was not in arrears because of a side agreement with the custodial parent to reduce his child support obligation. The trial court declined to give effect to the side agreement or to reduce the non-custodial parent's child support obligation. It determined that the non-custodial parent was in willful civil contempt and ordered him to pay the $42,700 arrearage to the custodial parent. The non-custodial parent takes issue on this appeal with the conclusions that he owed $42,700 in child support, that he was not entitled to a prospective reduction in his child support obligation, and that he was in willful civil contempt. We have determined that the judgment for the arrearage should be affirmed but that the judgment for contempt should be reversed and that the case should be remanded for the computation of the non-custodial parent's prospective child support obligation.

## I.

Sherry McAllister (formerly Goode) and Danny Goode married in October 1979. Their marriage foundered six years later. They negotiated the first of two property settlement agreements in June 1986 in which Mr. Goode agreed to give custody of the parties' three children to Ms. McAllister and to pay $250 per week in child support. On October 21, 1986, the Circuit Court for Sumner County entered a final divorce decree incorporating the parties' agreements. Even though the decree directed Mr. Goode to pay $250 per week in child support, Ms. McAllister signed a notarized document in October 27, 1986, stating:

> I, Sherry Goode have reduced the payment of Child
> support, from Danny Goode, to 150.00 dollars per
> week, as apposed [sic] to the 250.00 per week, he has

been paying. This is in effect beginning October 25, 1985.

Neither party sought to modify the final divorce decree to reflect this agreement. Mr. Goode simply began paying Ms. McAllister $150, instead of $250, per week.

In August 1994 the State of Tennessee, on Ms. McAllister's relation,[1] sought to hold Mr. Goode in contempt for failing to pay the $250 per week child support required by the October 1986 order. The trial court conducted a hearing in October 1994 and directed Mr. Goode to continue paying $150 per week in child support pending another hearing. Following a December 1994 hearing, the trial court entered an order in January 1995, finding that Mr. Goode owed $42,700 in past due child support and directing him to pay $250 per week in child support and $50 per week toward the arrearage. The trial court declined to consider reducing Mr. Goode's child support because he had not filed a petition seeking a reduction.

In February 1995, Mr. Goode petitioned for a reduction in child support. Following a hearing in July 1995, the trial court denied Mr. Goode's petition to reduce his child support, reaffirmed its earlier order directing him to pay $250 per week in child support, and increased Mr. Goode's arrearage payment to $100 per week. As a result of this decision, Mr. Goode's payments for child support and the arrearage, including the trial court clerk's five percent commission, amounted to $367.50 per week. The trial court denied Mr. Goode's post-trial motion on September 6, 1995. It also modified its January 1995 order to find specifically that Mr. Goode was in "willful civil contempt" for failing to pay child support but declined to incarcerate Mr. Goode.

## II.

### THE EFFECT OF THE OCTOBER 27, 1986 AGREEMENT

---

[1] The State's petition does not specifically explain the basis of its standing to seek Ms. McAllister's child support; however, state and federal law require custodial parents of children receiving public support to assign their rights to support from third-parties to the State. See 42 U.S.C. § 602(a)(26) (1988); Tenn. Code Ann. § 71-3-124 (Supp. 1996).

Mr. Goode first asserts that the trial court should have excused his failure to pay $250 per week in child support from October 1986 through August 1994 because Ms. McAllister had agreed to accept $150 in weekly child support rather than the $250 per week ordered by the trial court. This agreement is not legally enforceable because parties cannot alter or amend a child support order by private agreement once it has been entered. *Conner v. Parrish*, No. 89-282-II, 1990 WL 7461, at *2 (Tenn. Ct. App. Feb. 2, 1990) (no Tenn. R. App. P. 11 filed); *Rasnic v. Wynn*, 625 S.W.2d 278, 281 (Tenn. Ct. App. 1981).[2] Accordingly, the agreement can only affect Mr. Goode's court-ordered child support obligation if it supplies the basis for a recognized equitable defense to the demand for back child support.

Equitable defenses that would have the effect of retroactively modifying a child support obligation are no longer available in cases such as this one because of the Tennessee Supreme Court's construction of Tenn. Code Ann. § 36-5-101(a)(5). *Rutledge v. Barrett,* 802 S.W.2d 604, 607 (Tenn. 1991); *see also Brown v. Heggie,* 876 S.W.2d 98, 101 (Tenn. Ct. App. 1993). While refusing to permit Mr. Goode to raise equitable defenses may seem harsh, the General Assembly and the Tennessee Supreme Court have decided that the aggregate public good derived from requiring all obligor parents to comply fully with lawful child support orders outweighs the seeming harsh results in any particular case. Accordingly, the trial court correctly declined to recognize the October 27, 1986 agreement as a basis for excusing Mr. Goode from his child support obligation.

### III.
#### THE CONSTITUTIONALITY OF TENN. CODE ANN. § 36-5-101(a)(5)

Tenn. Code Ann. § 36-5-101(a)(5), as construed by the Tennessee Supreme Court, clearly undermines Mr. Goode's efforts to avoid paying the $42,700 child

---

[2]Tenn. Code Ann. § 36-5-101(h) (1996) now requires marital dissolution agreements to "affirmatively acknowledge that no action by the parties will be effective to reduce child support after the due date of each payment, and that they understand that court approval must be obtained before child support can be reduced, unless such payments are automatically reduced or terminated under the terms of the agreement."

support arrearage. Accordingly, he asserts that the statute is unconstitutional because it retroactively impairs both his contractual agreement with Ms. McAllister and his ability to request a retroactive modification of his child support obligation. We have determined that Mr. Goode has no constitutionally protected interest in his agreement with Ms. McAllister or in his unexercised opportunity to seek a retroactive modification of his child support.

## A.

The authority of the courts to make retroactive changes in a non-custodial parent's child support obligation changed approximately five months after the entry of Mr. Goode's and Ms. McAllister's final divorce decree. At the time of the negotiation of the parties' property settlement agreements and the entry of the divorce decree, Tenn. Code Ann. § 36-5-101(a)(1) (Supp. 1986) (amended 1987) permitted trial courts to make retroactive modifications in child support in certain limited circumstances.[3] Accordingly, it was generally understood at that time that obligor parents could assert equitable defenses to claims for past due child support. *See Smith v. Smith,* 643 S.W.2d 320, 323 (Tenn. 1982); *Nissen v. Miller,* 642 S.W.2d 428, 430-31 (Tenn. Ct. App. 1982).

During its 1987 session, the General Assembly removed Tenn. Code Ann. § 36-5-101(a)(1)'s retroactive modification feature in order to avoid losing millions of dollars in federal welfare funds. Act of March 27, 1987, ch. 39, § 1, 1987 Tenn. Pub. Acts 47; *Rutledge v. Barrett,* 802 S.W.2d at 606. As a result of this amendment, Tenn. Code Ann. § 36-5-101(a)(5) specifically provides that a child support judgment "shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties."

---

[3]At the time, Tenn. Code Ann. § 36-5-101(a)(1) provided, in part, that:

> Any such modification of an allowance shall be made retroactively only upon a specific finding that the obligor was unable to pay the full amount of such allowance through no intentional fault of his or her own and that the facts of the case require such a modification retroactively in order to meet the ends of justice.

# B.

## VIOLATION OF TENN. CONST. ART. I, § 20

Our consideration of Mr. Goode's attack on the constitutionality of the 1987 amendment to Tenn. Code Ann. § 36-5-101(a)(1) must be guided by the recognition that the General Assembly has complete control over judicial remedies subject only to the limitations in the state and federal constitutions. *Alamo Dev. Corp. v. Thomas,* 186 Tenn. 631, 640, 212 S.W.2d 606, 610 (1948); *Pacific Eastern Corp. v. Gulf Life Holding Co.,* 902 S.W.2d 946, 955 (Tenn. Ct. App. 1995). One of these constitutional limitations can be found in Tenn. Const. art. I, § 20 which states "[t]hat no retrospective law, or law impairing the obligations of contracts, shall be made." Rather than proscribing all retrospective laws, this provision proscribes legislation that impairs contractual or vested legal rights. *Dark Tobacco Growers' Co-op. Ass'n v. Dunn,* 150 Tenn. 614, 632, 266 S.W. 308, 312 (1924); *Shields v. Clifton Hill Land Co.,* 94 Tenn. 123, 148, 28 S.W. 668, 674 (1894). Thus, to be successful with his Tenn. Const. art. I, § 20 claim, Mr. Goode must demonstrate that he possesses an actual contract right or a vested legal right.

## IMPAIRMENT OF CONTRACT

We consider first whether Mr. Goode has demonstrated that the 1987 amendment to Tenn. Code Ann. § 36-5-101(a)(1) interferes with a contract right. In order to be protected by Tenn. Const. art. I, § 20, a contract right must be legally enforceable and must not conflict with the constitution, the statutes, or the common law. *Spiegel v. Thomas, Mann & Smith, P.C.*, 811 S.W.2d 528, 530 (Tenn. 1991); *Lazenby v. Universal Underwriters Ins. Co.*, 214 Tenn. 639, 648, 383 S.W.2d 1, 5 (1964) (recognizing that contracts that conflict with constitutions, statutes, or the common law violate public policy and are unenforceable). The October 27, 1986 agreement signed by Ms. McAllister contravened positive law when it was signed because, even then, the parties did not have the authority to alter the trial court's child support decree by private agreement. *Conner v. Parrish, supra*, 1990 WL 7461, at *2; *Rasnic v. Wynn,* 925 S.W.2d at 281.

Accordingly, Mr. Goode never had an enforceable contractual right entitled to constitutional protection.

## IMPAIRMENT OF A VESTED RIGHT

Mr. Goode also asserts that the 1987 amendment to Tenn. Code Ann. § 36-5-101(a)(1) interfered with his vested legal right to seek a retroactive modification of his child support obligation. Retroactive modifications of child support obligations were not commonplace prior to 1987. Obligor parents could obtain a retroactive modification only by demonstrating that they were unable to pay the court-ordered child support through no fault of their own and that granting them retroactive relief was required to meet the ends of justice. Since Mr. Goode had not requested a modification of his child support before the enactment of the 1987 amendment to Tenn. Code Ann. § 36-5-101(a)(1), he had, at most, only an expectation that he could seek a retroactive modification if circumstances ever warranted it.

The right Mr. Goode now claims is a remedial one. A remedial right cannot be considered vested unless it is something more than an expectation based on the anticipated continuation of the present law. *Landgraf v. USI Film Prods.,* 511 U.S. 244, 269, 114 S. Ct. 1483, 1499 (1994) (holding that a statute is not retrospective simply because it upsets expectations based on prior law); *Stratton Claimants v. Morris Claimants,* 89 Tenn. 497, 516-17, 15 S.W. 87, 91 (1891); 2 Thomas M. Cooley, *A Treatise on Constitutional Limitations* 749 (8th ed. 1927). Thus, for the purpose of constitutional analysis, the Tennessee Supreme Court has held that a remedial right becomes vested only when a party files a complaint or petition seeking to invoke it. *Dupuis v. Hand,* 814 S.W.2d 340, 343 (Tenn. 1991) (holding that Tenn. Const. art. I, § 20 prohibits retroactively applying a statute to previously-filed cases); *Morris v. Gross,* 572 S.W.2d 902, 905-07 (Tenn. 1978).

When the final divorce decree was entered in 1986, Mr. Goode had only an expectation that he would be able to seek retroactive modifications in his child support if the need arose. Since he did not seek such a modification prior to 1987, his expectation never ripened into a vested right prior to the 1987 amendment to

Tenn. Code Ann. § 36-5-101(a)(1).  The courts had already been divested of authority to modify child support orders retroactively by the time Mr. Goode filed his petition in February 1995.  Thus, as applied to Mr. Goode's 1995 petition, the 1987 amendment of Tenn. Code Ann. § 36-5-101(a)(1) did not have a prohibited retrospective effect.

## C.
### VIOLATION OF TENN. CONST. ART. I, § 8

Mr. Goode's final constitutional challenge to the 1987 amendment to Tenn. Code Ann. § 36-5-101(a)(1) is based on the Law of the Land Clause of Tenn. Const. art. I, § 8 that protects fundamental property and liberty interests from abridgment under the color of state law.  Tenn. Const. art. I, § 8, like its counterpart in the Fourteenth Amendment to the United States Constitution,[4] does not protect "unilateral expectations" or "abstract needs or desires." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972).  Rather, it protects vested rights, *Officer v. Young,* 13 Tenn. (5 Yer.) 320, 322-23 (1833), that are created and defined by existing rules and understandings that stem from an independent source such as state law.  *Mid-South Indoor Horse Racing, Inc. v. Tennessee State Racing Comm'n,* 798 S.W.2d 531, 540 (Tenn. Ct. App. 1990).

Since Mr. Goode did not file a petition seeking a retroactive modification of his child support before the 1987 amendment to Tenn. Code Ann. § 36-5-101(a)(1), he never acquired a vested right to seek this remedy.  By the time he filed a petition to modify his child support obligation, the opportunity to obtain retroactive relief had been extinguished for eight years.  Accordingly, declining to permit Mr. Goode to benefit in 1995 from a provision that had been repealed since 1987 was not contrary to Tenn. Const. art. I, § 8.

## IV.
### PROSPECTIVE REDUCTION OF MR. GOODE'S CHILD SUPPORT

---

[4]The "law of the land" clause in Tenn. Const. art. I, § 8 is synonymous with the Due Process Clause of the Fourteenth Amendment.  *Riggs v. Burson,* 941 S.W.2d 44, 51 (Tenn. 1997); *State v. Trusty,* 919 S.W.2d 305, 309 (Tenn. 1996); *Harbison v. Knoxville Iron Co.,* 103 Tenn. 421, 431, 53 S.W. 955, 957 (1899).

Mr. Goode also takes issue with the trial court's denial of his request for a prospective modification of his child support obligation. The uncontroverted evidence shows that at the time of the July 1995 hearing, Mr. Goode was earning a gross income of approximately $3,000 per month as a truck driver for Averitt Express in Nashville. The current child support guidelines require obligor parents with three children to pay forty-one percent of the "net income" as defined in the guidelines for child support. *See* Tenn. Comp. R. & Regs. r. 1240-2-4-.03(5) (1994). The net monthly income of a person earning $3,000 per month is $2,280.96, and thus an obligor parent's child support obligation for three children is $935 per month. This amount is less than Mr. Goode's current child support obligation of $1,075 per month.[5]

The mere fact that Mr. Goode's current child support exceeds the amount of support required by the guidelines does not necessarily mean that the trial court should have lowered Mr. Goode's monthly child support payments. Trial courts are required to modify child support obligations only when there is a "significant variance" between the amount of support required by the guidelines and the amount currently ordered. Tenn. Code Ann. § 36-5-101(a)(1). When the child support obligation exceeds $100 per month, the guidelines define a "significant variance" as one of at least fifteen percent. *See* Tenn. Comp. R. & Regs. r. 1240-2-4-.02(3).

Mr. Goode's current $1,075 per month child support obligation is fifteen percent higher than the amount he is required to pay under the current child support guidelines.[6] He is, therefore, entitled to a prospective reduction in his child support unless the current variance is the result of Mr. Goode's voluntary unemployment or underemployment or is due to a previous decision to deviate from the guidelines. *See* Tenn. Comp. R. & Regs. r. 1240-2-4-.02(3). The record

---

[5]$250/week × 4.3/weeks/month = $1,075/month.

[6]The calculation concerning whether a significant deviation exists must be based on the amount of the previously ordered support and the amount currently required by the guidelines. *See Hannah v. Lipps,* App. No. 03A01-9504-CV-00114, 1996 WL 10234, at *1 n.1 (Tenn. Ct. App. Jan. 11, 1996) (No Tenn. R. App. P. 11 application filed). The difference between Mr. Goode's current child support and the amount of support required by the guidelines is $140, and this amount deviates from the amount of support required by the guidelines by 14.97%. When rounded to next full percent, the amount of deviation is 15%.

contains no evidence that Mr. Goode is purposely underemployed or that the trial court ever made specific findings that Mr. Goode's child support should not be consistent with the amount required by the guidelines. Accordingly, on remand the trial court should either set Mr. Goode's child support in accordance with the guidelines or set out specifically in writing pursuant to Tenn. Code Ann. § 36-5-101(e)(1) the reasons why the application of the guidelines would be unjust or inappropriate in this case.

## V.

### THE CALCULATION OF THE ARREARAGE

Mr. Goode raises a final issue concerning the amount of his child support arrearage. He asserts that the trial court erred by including the months of November and December 1994 in its arrearage calculation because the payments made during these months were in accordance with the trial court's November 1, 1994 order directing him to continue paying child support at the rate of $150 per week pending a hearing on the merits. This argument overlooks the fact that the November 1, 1994 order was an interim order, not a final judgment.

An interim order is one that adjudicates an issue preliminarily; while a final order fully and completely defines the parties' rights with regard to the issue, leaving nothing else for the trial court to do. *Vineyard v. Vineyard*, 26 Tenn. App. 232, 241, 170 S.W.2d 917, 920 (1942); Restatement of Judgments § 41, cmt. a (1942). Until a judgment becomes final, it remains within the court's control and may be modified any time prior to the entry of a final judgment. *Stidham v. Fickle Heirs*, 643 S.W.2d 324, 328 (Tenn. 1982).

The November 1, 1994 order was intended to preserve the status quo temporarily until the trial court could conduct a hearing on the merits. It did not purport to adjudicate Mr. Goode's child support obligation because at the time it was entered, the trial court had heard no proof on the issue. In fact, the trial court could not have altered Mr. Goode's child support obligation at that time because Mr. Goode had not yet filed a motion seeking a reduction. Accordingly, the trial

court did not err by including the months of November and December 1994 in its final calculation of Mr. Goode's arrearage.

## VI.

### THE WILLFUL CIVIL CONTEMPT FINDING

As a final matter, Mr. Goode takes issue with the trial court's determination that he had committed "willful civil contempt" by failing to pay the full amount of his court-ordered child support for almost eight years. He asserts that he did not willfully disregard the final divorce decree because he believed in good faith that Ms. McAllister's October 27, 1986 agreement controlled the amount of his child support obligation.

A contemptuous act is a willful, purposeful failure or refusal to comply with a court order. *Haynes v. Haynes,* 904 S.W.2d 118, 120 (Tenn. Ct. App. 1995) (holding that a finding of willful conduct must precede a judgment for contempt). On at least two occasions, this court has held that the existence of a side agreement between the parties with regard to child support may provide a defense to a contempt petition, even though the agreement itself is unenforceable. *Laird v. Laird,* App. No. 86-212-II, 1986 WL 14042, at *4 (Tenn. Ct. App. Dec. 12, 1986) (No Tenn. R. App. P. 11 application filed) (holding that an agreement precluded a finding that a father was wilfully refusing to pay child support); *Federico v. Worley,* App. No. 87-5-II, 1987 WL 11765, at *3 (Tenn. Ct. App. June 5, 1987), *perm. app. denied* (Tenn. Aug. 31, 1987) (holding that a finding of contempt in the face of an agreement "would amount to a gross miscarriage of justice").

Mr. Goode and Ms. McAllister entered into a side agreement on October 27, 1986 that Mr. Goode would pay $150 per week in child support despite the October 21, 1986 order directing him to pay $250 per week. The record contains no evidence that the parties did not enter into this agreement in good faith and at arms' length or that either party knew that the agreement was legally unenforceable. With the evidence in this posture, the trial court should not have found that Mr. Goode was in contempt for willfully disregarding the trial court's

child support order from October 1986 through August 1994. Accordingly, we reverse the trial court's finding that Mr. Goode was in willful civil contempt and, on remand, direct that the claim for contempt be dismissed.

## VII.

We affirm the trial court's judgment that Mr. Goode owes $42,700 in back child support and that he should pay $100 per week toward this arrearage. We reverse the trial court's finding that Mr. Goode is in willful civil contempt and remand the case for further proceedings to set Mr. Goode's prospective child support in accordance with this opinion. We tax the costs of this appeal in equal proportions against Danny Goode and his surety and to the State of Tennessee for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
SAMUEL L. LEWIS, JUDGE

_____
BEN H. CANTRELL, JUDGE