FILED
09/17/2019
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 4, 2019 Session

# IN RE JOHN B.[1]

**Appeal from the Juvenile Court for Macon County**
**No. 2012-JV-10     Ken Witcher, Judge**

_____

## No. M2018-01589-COA-R3-JV

_____

This is an appeal in a proceeding to modify a residential parenting plan, established in January 2013. The initial petition to modify the plan was filed by the Father, accompanied by his proposed plan, in October 2016; Mother answered the petition in January 2017 and a hearing was set for two non-consecutive days in July 2018. During the hiatus in the hearing, the Mother filed a counter-petition and a proposed parenting time plan. The hearing resumed solely on Father's plan and the court entered an order finding a material change of circumstance and reducing Father's parenting time; Father appeals. Because the court has not yet resolved the claims between the parties, we dismiss the appeal for lack of a final judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated;**
**Appeal Dismissed and Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ARNOLD B. GOLDIN, J., joined.

Bert W. McCarter, Murfreesboro, Tennessee, for the appellant, Scott H. B.

Lisa C. Cothron, Lafayette, Tennessee, for the appellee, Nedra D. P.

## MEMORANDUM OPINION[2]

_____

[1] This Court has a policy of protecting the identity of children by initializing the last names of the parties.

[2] Rule 10 of the Rules of the Court of Appeals states:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

This appeal arises out of proceedings related to a petition to modify a parenting plan filed by Scott B., father of John B., and a counter-petition filed by Nedra P., John B.'s mother. Father's petition, in which he alleged facts which he contended showed a material change of circumstance supporting a modification in the parenting plan which had been entered on January 31, 2013, was filed on October 18, 2016; Father filed a proposed parenting plan with the petition which increased his residential parenting time and designated him primary residential parent. Mother answered the petition on January 17, 2017, denying that Father was entitled to relief; Mother did not include a proposed parenting plan with her answer. In due course, a hearing on Father's petition was set for July 9 and 16, 2018.

A hearing on Father's petition began on July 9; in her opening presentation, Mother's counsel stated: "In sum, we're asking this Court not to increase [Father's] parenting time, nor his decision-making authority, but actually to limit it." At the end of the first day, the court asked both counsel:

> One thing that I want some input on from both of you — and this may be something you can do between now and next Monday — [Mother's counsel] is apparently asking that the Court modify the parenting plan in a way that she wants it to be modified. Now, how can I do that? You haven't filed any kind of action asking the Court to modify. Can the Court do that?

Mother's counsel responded: "Well, Your Honor, they asked to modify custody, not real clearly, and/or the parenting schedule, and we're essentially saying it should not be modified that way, it should be modified this way. We have not filed a counter-complaint, Your Honor."

On July 12, Mother filed a Counter-Petition, in which she sought to limit Father's residential parenting time to "either supervised parenting time during the day on alternate weekends, or in the alternative, limited to 48 hour periods, with the exception of the week after Christmas, with [the] requirement that Father immediately begin, and successfully complete, a forensic psychological evaluation and recommended treatment . . ." Mother attached a proposed parenting plan to her petition, which designated her as primary residential parent, gave her 303 days of parenting time and Father 62 days, and placed all decision-making authority with her.

When the hearing resumed on July 16, the court engaged in the following colloquy with counsel:

> [Mother's Counsel]: Your Honor, as a preliminary matter, when we were here last Monday you asked about -- essentially, about whether or not we should have filed a counter-complaint, and I think that's a very interesting question, and I actually think the answer is no, but because I

don't like to take risks, I filed a counter-complaint on Thursday, together with mother's proposed parenting plan.

Now, I have advised Mr. McCarter that because of it being late filed, I would have no objection if he wants to have a continuance so that he has time to review the counter-petition with his client more carefully and be prepared, that he might not want to close his proof.

* * *

THE COURT: Mr. McCarter, do you wish to respond?

[Fathers' counsel]: Judge, we're here on my petition, the petition that's been pending for some time now. This case has been set for a significant period of time. Obviously, I can't control what Ms. Cothron and her client do. If they want to file their own petition – and it appears they want to further limit my client's parenting time – that's their business and that just needs to be set at a different date after the appropriate discovery and things of that nature is taken.

So, obviously, I don't want a continuance. I've got Ms. Patterson here today to testify. Ms. Green is here to testify. Mr. Bowman is here, I think, to testify. We're here geared up and ready to tee it up, I'm ready to tee it up, so with respect to Ms. Cothron suggesting that I may want a continuance, I don't want a continuance with respect to my petition. It's here. We're here. We're ready to go.

***

So with respect to their counter-petition, I get 30 days to answer that. If they want to proceed with that, we just have to go through the proper protocol, in my mind, to get that done, but as far as I'm concerned, we're here ready to go. We've got all of our stuff laid out. I'm ready to move forward with our case today, Judge.

[Mother's counsel]: . . . We are here about the best interest of John, and granted, the counter-complaint, if necessary, should have been filed before, so I'm not wishing to take any advantage of Mr. McCarter or his client. I don't think there are any surprises in this case that's been going on since 2016, but for the sake of judicial economy, rather than having to come back on a later date on our counter-complaint, that was my suggestion, and certainly I was not suggesting that we not take testimony from the witnesses that have been subpoenaed here.

- 3 -

\*\*\*

> THE COURT: Of course, Mr. McCarter, you've stated that you don't agree that we're proceeding on the counterclaim at this point in time because you just received it and hadn't had time to answer it, so we're just proceeding on your case as far as you're concerned. Is that correct?

> [Fathers' counsel]: Yes, Judge. I just got the counter-petition and I got, along with that, about a 21-page brief with that today, so as far as I'm concerned I would respectfully suggest to the Court we're just here on my petition on behalf of [Father].

> THE COURT: Well, that's what I'm going to do. We will proceed with the hearing that we started the other day on the original petition that was filed in the case by Mr. McCarter.

On August 6, the court entered findings of fact and conclusions of law and the judgment from which the appeal has been taken; the judgment recites that the cause was heard on Father's petition and Mother's answer.

A party is entitled to an appeal as of right only after the trial court has entered a final judgment. Tenn. R. App. P. 3(a); *In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003); *King v. Spain,* No. M2006-02178-COA-R3-CV, 2007 WL 3202757 at \*8 (Tenn. Ct. App. Oct. 31, 2007). A final judgment is a judgment that resolves all the claims between all the parties, "leaving nothing else for the trial court to do." *State ex rel. McAllister v. Goode*, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997). An order that adjudicates fewer than all the claims between all the parties is subject to revision at any time before the entry of a final judgment and is not appealable as of right. Tenn. R. App. P. 3(a); *In re Estate of Henderson*, 121 S.W.3d at 645. The trial court may direct the entry of a final judgment as to fewer than all of the claims or parties, but only upon an express determination that there is no just reason for delay and an express direction for the entry of judgment. Tenn. R. Civ. P. 54.02.

On the state of the record presented, Mother's Counter-Petition has not yet been ruled upon or otherwise disposed of; her claims remain outstanding. Thus, the August 6, 2018 order is not a final judgment for purposes of appeal, unless and until the trial court directs entry of a final judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure.

The appeal is hereby dismissed without prejudice to the filing of a new appeal once a final judgment has been entered. The case is remanded to the trial court for

- 4 -

further proceedings consistent with this opinion. Costs of the appeal are taxed to Appellant.


PER CURIAM