IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 15, 2020 Session

**TIMOTHY A. BAXTER v. JENNIFER D. ROWAN**

**Appeal from the Juvenile Court for Madison County**
**No. 55-48873          Larry McKenzie, Judge**

_____

**No. W2018-02209-COA-R3-JV**

_____

This case involves an unwed father's right to visitation with his minor child. After an initial denial of Father's request for visitation, the trial court later granted Father and Father's mother visitation rights following the filing of a Rule 60 motion. In granting relief, the trial court found that Father had standing, having previously executed a voluntary acknowledgment of paternity. Mother filed a timely appeal arguing that the trial court erred in granting Father relief. Notably, Mother contested Father's standing to sue for visitation, arguing that the voluntary acknowledgment of paternity did not vest Father with standing to sue. For the reasons contained herein, we affirm in part and vacate in part the trial court's order granting Father relief. Further, we reverse the portion of the trial court's order granting visitation rights to Father's mother.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed in Part, Reversed in Part, Vacated in Part, and Remanded.**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which CARMA DENNIS MCGEE, JJ., joined. KENNY ARMSTRONG, J., filed a separate concurring opinion.

Mary Jo Middlebrooks, Jackson, Tennessee, for the appellant, Jennifer D. Rowan.

Timothy Aaron Baxter[1], Hartsville, Tennessee, Pro se.

**OPINION**

**I. BACKGROUND AND PROCEDURAL HISTORY**

Timothy A. Baxter ("Father") was convicted of aggravated assault and sentenced to seventeen years in prison beginning in June of 2011. The child at issue ("Child") was born in July of 2011. Following the child's birth, Father and Jennifer D. Rowan ("Mother")

_____

[1] Appellee Timothy A. Baxter did not file a brief or participate in oral argument.

signed a notarized voluntary acknowledgement of paternity (the "VAP"), which states that Father is the legal parent of Child. Soon thereafter, Mother began taking Child with her to visit Father at the prison. These visits continued until June of 2013, after which the visits ceased. In July of 2013, Mother filed a petition requesting to be named as Child's primary custodian, which was granted. Subsequently, on April 13, 2014, Father filed a Motion for Visitation Rights in the Madison County Juvenile Court. Mother filed a Motion to Dismiss, arguing that Father lacked standing to seek visitation rights with the minor child as no parentage order adjudicating him to be the father had been entered. On June 27, 2014, the trial court entered an order dismissing Father's Motion for Visitation Rights due to a lack of standing. Father subsequently filed a Rule 60.02 motion, arguing that the notarized VAP signed by both he and Mother gave him standing to sue for parental rights, regardless of whether a parentage order had been entered. By order dated July 12, 2018, the trial court granted Father relief, declaring him to be Child's father.[2] In November of 2018, the trial court entered a second order granting Father certain communication rights with the child, but it reserved the determination of any future visitation at the prison. The court also awarded Father's mother ("Grandmother") visitation rights such that she may facilitate future visitation with Father at the prison. Mother now appeals the trial court's order granting Father relief under Rule 60.02. For the reasons contained herein, we affirm in part and vacate in part in regards to Father, and we reverse as to Grandmother.

## II. ISSUES PRESENTED

Mother appeals the trial court's decision and raises the following issues:

1. Whether the trial court erred in granting Father's motion under Rule 60.02 of the Tennessee Rules of Civil Procedure.
2. Whether the trial court erred in awarding Father parenting time.
3. Whether the trial court erred in awarding parenting time to the paternal grandmother.
4. Whether this Court should award the appellant attorney's fees and costs incurred for this appeal.

## III. DISCUSSION

As noted, Mother advances four separate issues for appeal. We will address each of those issues separately.

*Whether the Trial Court's Order Constitutes a Final Judgment*

---

[2] Judge Christy Little initially presided over this matter, granting Mother's motion to dismiss. Judge Little later recused herself and the Tennessee Supreme Court, in an ordered dated April 6, 2015, transferred the case to Judge Larry McKenzie.

Before we can address Mother's issues on appeal, we must first determine whether it is appropriate for this Court to assume jurisdiction in this case pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure.

Generally, "appellate courts have jurisdiction over final judgments only." *Bayberry Assocs. v. Jones*, 783 S.W.3d 553, 559 (Tenn. 1990) (citing *Aetna Cas. & Sur. Co. v. Miller*, 491 S.W.2d 85 (Tenn. 1973)). "A final judgment is one that resolves all the issues in the case, 'leaving nothing else for the trial court to do.'" *In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003) (quoting *State ex rel. McAllister v. Goode*, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997)). "[A]ny order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable[.]" Tenn. R. App. P. 3.

It is clear from our review of the record in this case that the order on appeal is not final. As will be explained further, the trial court's order expressly reserves issues for a future determination. Nevertheless, this is not necessarily dispositive of our ability to rule on this appeal. Rule 2 of the Tennessee Rules of Appellate Procedure provides that this Court "may suspend the requirements or provisions of any of these rules in a particular case on motion of a party or on its motion and may order proceedings in accordance with its discretion[.]"[3] Tenn. R. App. P. 2. This Court previously exercised its authority to suspend the finality requirement set forth in Rule 3(a) in *Ruff v. Raleigh Assembly of God Church, Inc.*, No. W2001-02578-COA-R3-CV, 2003 WL 21729442 (Tenn. Ct. App. July 14, 2003), *perm. app. denied* (Tenn. Jan. 5, 2004). There, this Court explained,

> [i]n order to suspend the requirements of Rule 3(a), this Court must affirmatively show that the rule is suspended and must give a "good reason" for the suspension. *See Bayberry Assocs.*, 783 S.W.2d at 559; *see also* Tenn. R. App. P. 2. The stated purpose behind Rule 2 is to empower the courts to "relieve litigants of the consequences of noncompliance with the rules in those circumstances in which it is appropriate to do so." Tenn. R. App. P. 2 (advisory commission comment).

*Id.* at *5.

However, this ability to suspend the rules should be used sparingly and "only in the most extenuating circumstances, where justice so demands."[4] *See Williams v. Tenn.*

---

[3] While Rule 2 does permit this Court to suspend the requirements or provisions of appellate rules, it does not permit any suspension of certain requirements set forth in Rules 4, 9(c), 11, or 12 of the Tennessee Rules of Appellate Procedure. Tenn. R. App. P. 2.

[4] Although this Court has the ability to suspend the rules, such suspension will not be done as a "mere convenience or to work an end-run around Rule 54.02 of the Tennessee Rules of Civil Procedure, or Rules 9 and 10 of the Tennessee Rules of Appellate Procedure." *Williams v. Tenn. Farmers Reassurance Co.*, No. M2010-01689-COA-R3-CV, 2011 WL 1842893, at *6 (Tenn. Ct. App. May 12, 2011).

*Farmers Reassurance Co.*, No. M2010-01689-COA-R3-CV, 2011 WL 1842893, at *6 (Tenn. Ct. App. May 12, 2011). In *Ruff*, this Court found such suspension appropriate by noting that the underlying matter constituted a third appeal "in a case with a tortured history" and that the parties had been "entangled in this case for over ten years and are entitled to some form of closure." *Ruff*, 2003 WL 21729442, at *5. Similarly, in *In re Estate of Martha B. Shubert*, this Court again found it appropriate to suspend the finality requirement, citing the lengthy litigation and the likelihood of a future appeal as reasons why the rule should be suspended. *See In re Estate of Martha B. Schubert*, No. E2019-02069-COA-R3-CV, 2020 WL 5614988, at *5 (Tenn. Ct. App. Sept. 18, 2020).

While this appeal does not stem from a final order as required under Rule 3, as the trial court, "expressly reserve[d] the issue of visitation at the prison" for a future determination, we conclude there exists good cause as to why Rule 3's finality requirement should be suspended in this particular case. The parties have been in litigation since April of 2014 and are entitled to some relief in the matter. Based upon a review of the record, it is apparent that, if a decision is not rendered due to a lack of finality, this same appeal will almost certainly be presented to this Court in the future once the trial court renders a decision regarding the exact parameters of the Child's potential visitation with Appellee. It is evident that this litigation has been contentious and that remanding this case would only contribute to further delay. Moreover, because the underlying case concerns potential visitation with a minor child, we conclude that it warrants some urgency in rendering a decision without additional delay. Therefore, we find good cause to suspend the requirements of Rule 3 and exercise jurisdiction over this appeal. However, we caution litigants that, while we are suspending the requirements set forth in the Tennessee Rules of Appellate Procedure here, under the particular facts of this case, we cannot say we will choose to do so in the future.

*Whether Father Has Standing*

At issue is whether the trial court erred in granting Father's Rule 60.02 motion and in particular whether or not Father had standing to even pursue visitation. Specifically, Mother asserts that Father has no standing to sue for parental rights as there has been no order establishing parentage entered in this case. Respectfully, we disagree with Mother's assertion that a voluntary acknowledgment of paternity does not confer standing on Father to sue for visitation with Child.

Tennessee Code Annotated section 24-7-113 provides for a simplified procedure in which unmarried fathers may legally establish their paternity over a child without "further order of the court." Tenn. Code Ann. § 24-7-113(a). This is otherwise known as a voluntary acknowledgment of paternity or VAP. Notably, the statute maintains that this VAP, "unless rescinded . . . shall be conclusive of that father's paternity without further order of the court." *Id*. There is a sixty-day period provided for in the statute in which the VAP may be rescinded. Tenn. Code Ann. § 24-7-113 (c)(1). However, if the VAP is not rescinded

- 4 -

pursuant to subsection (c), "[it], may only be challenged on the basis of fraud, whether extrinsic or intrinsic, duress, or material mistake of fact" within five years of the VAP's execution. Tenn. Code Ann. §§ 27-7-113 (e)(1), (2).[5] Based on our review of the record, the VAP in this case was filed in 2011. There is no evidence nor assertions set forth by Mother indicating that the VAP has been rescinded, nor does she appear to challenge its validity.[6] Therefore, "[t]he acknowledgment, unless rescinded pursuant to subsection (c), shall be conclusive of that father's paternity without further order of the court." Tenn. Code Ann. § 24-7-113(a).

Mother largely relies on this Court's language in *Milton v. Harness*, No. E2017-00092-COA-R10-CV, 2017 WL 837704 (Tenn. Ct. App. Mar. 3, 2017), to support her contention that the VAP does not vest Father with standing and that instead the trial court must enter an order of parentage before he may sue for custody and visitation rights. Mother predicates her argument by specifically citing language used by the *Milton* court, which explained,

> [a] biological father who has signed an 'acknowledgment of paternity' is declared the legal father with the obligation to pay support and the right to be given notice in the event of litigation or attempted termination of parental rights/adoption. The acknowledgment **does not** vest any custody rights or visitation rights upon the legal father.

*Id*. at \*5 (quoting *In re Hailey S.*, No M2016-00387-COA-R3-JV, 2016 WL 7048840, at \*9 (Tenn. Ct. App. Dec. 5, 2016)[7]) (emphasis added). While we agree with *Milton*'s

---

[5] As noted, pursuant to section 24-7-113(e)(1) and (2), a voluntary acknowledgment that is not rescinded pursuant to subsection (c) may only be challenged on "the basis of fraud, whether extrinsic or intrinsic, duress, or material mistake of fact." Tenn. Code Ann. § 24-7-113(e)(2). However, subsection (e)(2) provides that a challenge to a VAP "shall not be barred by the five-year statute of limitations where fraud in the procurement of the acknowledgment by the mother of the child is alleged and where the requested relief will not affect the interests of the child, the state, or any Title IV-D agency." *Id*.

[6] Apart from this VAP, we observe that Mother, according to the trial court's order dated July 20, 2018, admitted Father's paternity in open court. Although we do not have a transcript of the proceedings on which the July 20, 2018 order was based, nor do we have a statement of the evidence, it is well-settled in Tennessee that absent a transcript of the proceedings or statement of the evidence "it is 'conclusively presumed' on appeal that the findings of fact made by the trial court are supported by the evidence heard in that court and must be accepted as true by the appellate court." *J.C. Bradford & Co. v. Martin Const. Co.*, 576 S.W.2d 586, 587 (Tenn. 1979) (internal citation omitted). Pursuant to Rule 24 of the Tennessee Rules of Appellate Procedure, it is incumbent upon the appellant to provide "a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). Furthermore, in Mother's brief, she refers to Father as the "biological father."

[7] We find it pertinent to note that *In re Hailey S.* was designated as "Not For Citation" by the Tennessee Supreme Court under Tennessee Supreme Court Rule 4, § E which states in pertinent part, "[i]f an application for permission to appeal is hereafter denied by this Court with a "Not for Citation" designation, the opinion of the intermediate appellate court has no precedential value." Tenn. Sup. Ct. R.

statement that a VAP does not vest any custody rights or visitation rights upon the legal father,[8] we cannot agree that the execution of the VAP does not vest Father with standing to sue for custody and visitation rights.

In her brief, Mother specifically relies on *Milton* for the proposition that "the Tennessee Court of Appeals has repeatedly stated that the execution of an acknowledgment of paternity alone does not grant father *any* legal rights, and that a parentage order is necessary to create a legal parent-child relationship." (emphasis added). However, this statement does not align with current Tennessee law and is even belied by certain statements within *Milton*. In fact, *Milton* itself explicitly states that section 24-7-113 provides for "the right" to be given notice in the event of litigation or termination of a father's parental rights or potential adoption. *Id*.; Tenn. Code Ann. § 24-7-113. Therefore, it is inaccurate to say that a VAP does not vest a father with *any* rights, when it clearly does the opposite. Furthermore, the *Milton* court's statement that, "[u]ntil such time as the Trial Court enters an order establishing Father to be Child's legal father, there exists no legal parent-child relationship between Father and Child[,]" is erroneous. *Id*. (citing Tenn. Op. Att'y Gen. No. 90-68 (June 13, 1990)). This Court has previously held that a properly executed VAP establishes a "legal relationship" between the father and the child. *State ex rel. Dancy v. King*, No. W2010-00934-COA-R3-JV, 2011 WL 123559, at *3 (Tenn. Ct. App. Apr. 5, 2011) (citing *In re Adoption of W.J.P.*, No. E2007-01043-COA-R3-PT, 2008 WL 246015, at *7 (Tenn. Ct. App. Jan. 30, 2008)); *see also In re A.N.F.*, No. W2007-02122-COA-R3-PT, 2008 WL 4334712, at *13 (Tenn. Ct. App. Sept. 24, 2008) (noting that the execution of a VAP creates a legal relationship between a father and child). The foregoing statement from *Milton*, which disclaims the existence of a legal relationship between a father and child absent the entry of an order of parentage, appears to have been made in reliance on an official opinion from the office of the Tennessee Attorney General. *See Milton*, 2017 WL 837704, at *5; Tenn. Op. Att'y Gen. No. 90-68 (June 13, 1990). However, it bears noting that this Attorney General's opinion was issued in 1990, well before the codification of what is now Tennessee Code Annotated section 24-7-113. Therefore, the opinion's declaration that "Tennessee law does not recognize the legal relationship of parent and child between a putative father and a child born out of wedlock until the entry of a *court order* of paternity, adoption, or legitimation" is not an accurate presentment of current Tennessee law. *See* Tenn. Op. Att'y Gen. No. 90-68 (June 13, 1990) (emphasis added); Tenn. Code Ann. § 24-7-113(a) ("A voluntary acknowledgment of paternity . . . shall constitute a **legal** finding of paternity . . .") (emphasis added).

Thus, although we agree with the *Milton* court's statement that a VAP alone "does not vest custody rights or visitation rights upon the legal father[,]" *Milton*, 2017 WL

---

4, § E.

[8] "Absent an order of custody to the contrary, custody of a child born out of wedlock is with the mother." *See* Tenn. Code Ann. § 36-2-303 (providing the default rules for child custody involving unwed parents).

- 6 -

837704, at *7, we do not agree with Mother that a VAP under Tennessee Code Annotated section 24-7-113 would not afford a legal father with the standing to *sue* for those rights.[9]

Mother also appears to rely somewhat on Chapter 36 of the Tennessee Code, arguing that "[t]here is nothing in the statute which establishes the procedure by which parentage is ordered which substitutes a Voluntary Acknowledgment of Paternity for an Order of Parentage." Respectfully, we disagree with Mother's interpretation of the applicable Tennessee statutes to the extent that she maintains that an order of parentage is the only mechanism by which a father may establish parentage and acquire standing to sue for custody or visitation. Tennessee Code Annotated section 36-2-301 serves as a statement of purpose regarding the subsequent statutes regarding paternity and legitimation in the Tennessee Code. It expressly states that "[t]his chapter provides a single cause of action to establish parentage of children other than by adoption . . . *or by acknowledgment of parentage* . . ." Tenn. Code Ann. § 36-2-301. Furthermore, Tennessee Code Annotated section 36-2-305(b)(1) states that "[a]bsent an agreement or an *acknowledgement of parentage* as prescribed by § 68-3-203(g), § 68-3-302, or § 68-3-305(b), a complaint to establish parentage may be filed." Tenn. Code Ann. § 36-2-305(b)(1). These referenced provisions from Title 68 are the very provisions pursuant to which a VAP under Tennessee Code Annotated section 24-7-113 is completed. *See* Tenn. Code Ann. 24-7-113(a) ("A voluntary acknowledgment of paternity which is completed under § 68-3-203(g), § 68-3-302, or § 68-3-305(b) or under similar provisions of another state or government shall constitute a legal finding of paternity on the individual named as the father of the child in the acknowledgment[.]").

Based on our plain reading of the applicable statutes, it appears that the Code provides for multiple ways in which parentage may be established rather than the sole option of filing suit to specifically establish same. As indicated above, the statement of purpose in section 36-2-301 itself notes that parentage may be established by ways other than a cause of action to establish parentage of children by its inclusion of "other" along with express mentions of both adoption and acknowledgment of parentage. This language alone indicates that an order establishing parentage is not the sole manner in which a father may obtain standing to sue for custody and visitation rights.

Furthermore, Mother argues that the main purpose of this VAP concerns an acknowledgment of an obligation to pay child support. However, the notion that Tennessee

---

[9] In further support of this, consistent with section 24-7-113, under which a VAP establishes a legal relationship, we also note that the very VAP signed by Mother and Father in the present case stated that, as the legal father, Father will have "[t]he right to petition the court for visitation and custody." Additionally, the Acknowledgment also noted to Mother that, by signing, "[t]he child's father will have the right to ask the court for visitation or custody of the child." Additionally, this Court recently alluded to the significance of the language included on the VAP. *See State of Tennessee ex rel. Kimberly C. v. Gordon S.*, No. M2019-01499-COA-R3-JV, 2020 WL 7029358, at *2 (Tenn. Ct. App. Nov. 30, 2020) (quoting the VAP's language as providing notice to father as to his responsibilities regarding the child).

Code Annotated section 24-7-113's alleged *main* purpose is to simplify the child support process does not effectively remove the potential for other purposes. In fact, Tennessee Code Annotated section 24-7-113(a) states that this VAP "shall constitute a legal finding of paternity on the individual named as the father of the child in the acknowledgment. The acknowledgment, unless rescinded pursuant to subsection (c), shall be conclusive of that father's paternity **without further order of the court**." (emphasis added). The provision noting the VAP's purpose for support proceedings is mentioned only in subsection (b)(1) of the statute and nowhere in the statute does it declare that this is the statute's sole purpose.[10]

Based upon our careful reading of the applicable Tennessee statutes, we conclude that, while the VAP signed by both Mother and Father in the underlying cause of action does not confer visitation rights upon Father by mere dint of its execution, it does vest Father with standing to sue for those rights. Therefore, we affirm the trial court's finding that Father has standing.

*Whether the Trial Court Erred in Awarding Any Parenting Time to Father*

Although we find that Father has standing to sue for custody and visitation rights by way of executing the VAP, we vacate the trial court's award of communication rights to Father and remand for further proceedings.

In its order, the trial court found that Mother's decision to unilaterally discontinue Child's relationship with Father was not in the best interest of Child. From that determination, the trial court held that "Father shall have the right to write and talk to his daughter. Mother shall not interfere with these communications." However, based upon our review of the record, we cannot determine how the trial court intended to effectuate these awarded rights since its order provided no further guidance to the parties or this court. This is of particular concern and significantly complicates matters as Father is currently incarcerated and the relationship between the parties is contentious at best. Consequently, we vacate the trial court's award of parenting time, to the extent of letters and phone calls, and remand for further proceedings to set parameters for these communications. Furthermore, the actual visitation between Father and Child was expressly reserved by the trial court, which indicated that it would only award such visitation if it was satisfied that such visitation was in Child's best interest. Therefore, any issues about actual visitation are not presently before us.

---

[10] Specifically, Tennessee Code Annotated section 24-7-113(b)(1) states that "[a] voluntary acknowledgment of paternity . . . shall be a basis for establishing a support order without requiring any further proceedings to establish paternity."

*Whether the Trial Court Erred in Awarding Parenting Time to Grandmother*

In addition to challenging the rights awarded to Father in this appeal, Mother also challenges the trial court's grant of affirmative relief to Father's mother. For the reasons stated below, we vacate the award of parenting time to Grandmother.

Tennessee Code Annotated section 36-6-306 provides the proper avenue in which a grandparent may seek visitation rights to a grandchild. Specifically, under subsection (a), the statute notes that visitation rights may be awarded "when presented in a petition for grandparent visitation." Tenn. Code Ann. § 36-6-306(a). In the present case, nothing in the record evinces any indication that Grandmother ever filed a petition seeking visitation rights, nor did she even participate as a party in any capacity in the matter.

Because Grandmother was not a party and never petitioned the trial court to receive visitation rights with Child, it was error for the trial court to award her any such visitation rights. Therefore, we vacate this portion of the trial court's order.

*Whether This Court Should Award the Mother Attorney's Fees and Costs Incurred for This Appeal*

Mother has requested that this Court award her attorney's fees in her appeal against Father. Tennessee Code Annotated section 36-5-103(c) vests this Court with discretion to award attorney's fees and costs under appropriate circumstances. *Holt v. Holt*, 995 S.W.2d 68, 78 (Tenn. 1999). In determining whether an award of attorney's fees is warranted, this Court should consider, among other factors, "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered." *Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004) (citing *Parchman v. Parchman*, No. W2003-01204-COA-R3-CV, 2004 WL 2609198, at *6 (Tenn. Ct. App. Nov. 17, 2004)).

Respectfully, in exercising our discretion, we decline to award Mother attorney's fees and costs for this appeal.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, vacated in part and remanded.

_s/ Arnold Goldin_____
ARNOLD GOLDIN, JUDGE
