IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 2, 2025

## MARK KLEINMAN v. RHONDA LAWSON

**Appeal from the Juvenile Court for Sullivan County**
**No. BCJ-17404      Randy M. Kennedy, Judge**

_____

**No. E2024-00751-COA-R3-JV**

_____

This appeal concerns the trial court's findings of six counts of criminal contempt against Mother following a contentious, years-long custody battle. Due to the lack of a final judgment, we dismiss the appeal.

### Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and JEFFREY USMAN, JJ., joined.

Rhonda Lawson, Morristown, Tennessee, Pro Se.

Jason A. Creech, Johnson City, Tennessee, for the appellee, Mark Kleinman.

### MEMORANDUM OPINION[1]

### I. FACTS & PROCEDURAL HISTORY[2]

_____

[1] Rule 10 of the Rules of the Court of Appeals provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] For a more detailed recitation of the facts of the underlying child custody dispute, see this Court's prior opinion in *In re Kendin L.*, No. E2024-00209-COA-R3-JV, 2025 WL 799552 (Tenn. Ct. App. Mar. 13, 2025), *perm. app. denied* (Tenn. June 3, 2025).

In 2017, an extra-marital affair between Mark Kleinman ("Father") and Rhonda Lawson ("Mother") culminated in the pregnancy and birth of the parties' minor child in Kentucky. A years-long custody battle ensued, and in 2019, the Fayette Circuit Family Court ("Kentucky Court") awarded Father sole custody.

Notably, the Kentucky Court ordered Mother to refrain from posting material that contained the name and likeness of the parties' minor child on any publicly accessible social media platform. The order further prohibited Mother from posting "any material with commentary that tends to lead the viewers to believe that the child is in danger."

In the meantime, Father and his family moved to Tennessee, and Mother moved to Tennessee as well. In June 2020, Mother filed a petition in the Juvenile Court for the City of Bristol, Tennessee, seeking to be named primary residential parent and for the court to adopt her parenting plan granting her primary custody of the child. On October 14, 2020, the trial court enrolled for enforcement of the Kentucky Court's order concerning exposure of the child on social media. On December 7, 2022, the trial court modified its prior order to add as follows: "Neither party shall specifically refer to the minor child by name in: [ ] Any social media posts; [ ] Any postings to the internet <u>or</u> [ ] Emails to third parties, pending further orders of the court."

On January 31, 2024, the trial court entered its final judgment.[3] The court ordered, among other things, that its previous order suspending Mother's visitation would remain in effect "until such time as Petitioner engages in individual therapy with a provider experienced with legal issues and in the treatment of personality disorders . . . ." The trial court also notably found that it was in the child's best interest that his name be changed. The final order reiterated its previous orders prohibiting the parties from publicly posting the child's name and likeness on the internet.

On April 4, 2024—after the trial court's final judgment and while Mother's appeal was pending—Father filed a petition for five counts of criminal contempt in the trial court for several publicly available internet posts concerning the minor child that purportedly violated court orders. On April 17, 2024, he filed a supplemental motion adding an additional three counts of criminal contempt to his original petition. Together, the original and supplemental petitions claimed eight counts of willful criminal contempt, asserting that Mother intentionally violated court orders with the following social media posts:

> (1)     On November 23, 2023, Mother posted that she was "[f]ighting to get her stolen child Kendin [ ] back." In addition to identifying her son by his full name, she listed the names of Father, his counsel, and the Guardian ad Litem. Attached to the post were audio files of court proceedings, which

[3] Mother appealed the trial court's decision, which this Court affirmed on March 13, 2025. *In re Kendin L.*, 2025 WL 799552.

Mother attended remotely to avoid "be[ing] attacked and abused."

(2)     On November 26, 2023, Mother posted filings she made in the trial court that included her child's full name and her allegations concerning the case.

(3)     On January 28, 2024, she posted concerning "demonic attorneys, judges, and their helpers" and her "illegally stolen . . . Kendin." She indicated her intent to "put my story on a BILLBOARD." She attached links to more photos of the child.

(4)     On February 26, 2024, Mother posted videos and pictures of the child.

(5)     On March 12, 2024, she posted "JUSTICE FOR KENDIN," again indicating that the child had been "unlawfully stolen." The post contained images of Father, his counsel, and the trial court judge. She stated that her former attorney "ABUSED AND RAPED" her and attached a QR code linking to her Cash App account.

(6)     On February 3, 2024, she posted on the public "Parents in Custody Battles Support Group." The post included pictures of the trial court's previous order precluding her from posting about the case on social media.

(7)     On March 15, 2024, Mother posted a narrated video depicting large custom banners that portrayed the child's name and image as well as the name and image of Father and the trial court judge. The banners also included text claiming Mother was raped above a QR code linking to her Cash App account.

(8)     On March 27, 2024, she posted new and previously posted pictures of the child, including pictures of the child with his stepmother. The post stated that Mother was "back to business" regarding her belief that she needs to "RESCUE [HER] STOLEN CHILD."

On May 23, 2024, the trial court held a hearing on the contempt petition. Mother was advised of her rights by the court, and she opted to represent herself and to invoke her Fifth Amendment rights, declining to testify or to call any witnesses. Father and one other witness testified.

On May 24, 2024, the trial court entered an order finding Mother guilty of six counts of criminal contempt. She was fined $300.00 and sentenced to sixty days in jail. The order

stated that, if Mother removed the child's name and image from the publicly available internet posts, forty-five days of her sentence could be suspended. The trial court denied Father's request for attorney fees and also denied Mother's request to stay her sentence.

Mother timely appealed the trial court's decision and her sentence, which was to begin on May 24, 2024. However, that same day, this Court entered an order granting her motion to stay her sentence pending the outcome of the present appeal.

## II. Issues

Mother raises the following issues for review as stated in her brief:

1. Whether [Father's] failure to introduce into evidence the orders that [Mother] allegedly violated precludes [Mother's] contempt convictions.

2. Whether [Father] introduced sufficient evidence to prove that [Mother] actually violated the trial court's order.

3. Whether the trial court erred in relying on the testimony of a witness (who was an employee of the law firm hired by [Father]) who lacked direct knowledge and whose testimony was inherently unreliable.

4. Whether [Father] introduced sufficient evidence to prove that [Mother's] alleged violations were "willful."

5. Whether the trial court's convictions must be vacated due to its failure to make sufficient factual findings and conclusions of law.

For the following reasons, this appeal is dismissed because the trial court has not yet entered a final judgment.

## III. DISCUSSION

Mother is representing herself on appeal as she did before the trial court. She listed several issues in her brief that essentially boil down to this: whether the trial court erred in finding her guilty of contempt. To that end, she makes several unrelated arguments that her convictions should be overturned.

Before we reach the issue presented by Mother, we must determine whether we have subject matter jurisdiction over this appeal. A prerequisite for any court to hear a claim is for that court to have subject matter jurisdiction over the claim. *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994). Regardless of whether parties have raised the issue, an appellate court must determine whether it possesses subject matter jurisdiction over a claim

to properly adjudicate that claim. Tenn. R. App. P. 13(b). Our Supreme Court held in *Bayberry Associates v. Jones* that this Court and other appellate courts only hold subject matter jurisdiction over final judgments and those appeals of interlocutory orders allowed by the rules or by statute. *Bayberry Assocs. v. Jones*, 783 S.W.2d 553. 559 (Tenn. 1990). This is not an interlocutory appeal, but rather an appeal brought pursuant to Tennessee Rule of Appellate Procedure 3. Therefore, for this Court to possess subject matter jurisdiction over this appeal, the trial court order must constitute a final judgment.

As our Supreme Court has previously explained, "A final judgment is one that resolves all the issues in the case, 'leaving nothing else for the trial court to do.'" *In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003) (quoting *State ex rel. McAllister v. Goode*, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997)). As stated, after the hearing, the trial court entered an order finding Mother guilty of six counts of criminal contempt, and dismissing one count for "insufficient proof." She was fined $300.00 and sentenced to sixty days in jail.

After the notice of appeal was filed and briefing occurred, this Court entered an order on October 24, 2025, explaining that the trial court's order failed to adjudicate all of the claims for contempt alleged against Mother. As we stated,

> Appellant's Notice of Appeal denotes her intent to appeal an order of the trial court entered on May 24, 2024, which found Appellant guilty of six (6) counts of criminal contempt and found insufficient proof as to one (1) count. However, the trial court's written order leaves unresolved one (1) count alleged in Appellee's petitions for criminal contempt.

We ordered Mother to, either supplement the appellate record with a final judgment within fourteen days, or otherwise show cause in this Court why the appeal should not be dismissed for lack of jurisdiction. We also warned Mother that failure to comply with the terms of said Order could result in dismissal of the appeal. No response to that Order has been filed.[4] Father has now filed a Motion to Dismiss the appeal based upon a lack of jurisdiction.

As stated, on April 4, 2024, Father filed a petition for five counts of criminal contempt in the trial court. On April 17, 2024, he filed a supplemental motion adding an additional three counts of criminal contempt to his original petition. Together, Mother was alleged to have committed eight counts of willful criminal contempt. However, the trial court's order entered on May 24, 2024, from which this appeal is taken, only adjudicated

---

[4] On December 4, 2025, Mother filed a "Motion for Immediate Stay of Mittimus," which was not responsive to the Order entered on October 24, 2025. Because we have determined that we lack jurisdiction over this appeal, we do not reach the merits of this motion.

seven counts of criminal contempt, leaving one count unresolved. The order stated, in relevant part:

. . .

6.      The Court found Mother to be in willful criminal contempt of court for her postings, which were available for public viewing and/or which were actually observed by the witness on the following dates:
a. Two (2) postings in November 2023, which were still public and observed on March 12, 2024);
b. January 28, 2024 posting still public and observed on January 29, 2024;
c. February 3, 2024 posting to Facebook "custody support" group;
d. February 26, 2024 video post, which was observed and public on March 12, 2024;
e. March 15, 2024 video posted on Facebook (in which Mother's voice was identified. Mother's voice was narrating the video and referenced a banner [])

The above incidents constitute six (6) counts of willful criminal contempt. Mother is fined $300 and sentenced to sixty (60) days in jail for contempt. Forty-five (45) days of the sentence will be suspended *conditioned upon* Mother removing the child's image and name from any and all publicly available locations, including, but not limited to, social media, internet, emails [sic], banners. Mother will serve the remaining fifteen (15) days. Mother will report to the Sullivan County jail on Friday, May 24, 2024 at noon to begin her fifteen (15) day sentence for criminal contempt of court.

7. The Court found the posting of March 27, 2024 did not rise to the level of willful criminal contempt in that there was insufficient proof presented to identify the minor child in the posting. This charge was dismissed.

. . .

Because the order did not adjudicate all alleged counts of criminal contempt, the trial court's order was not a final judgment. Therefore, this Court does not have subject matter jurisdiction and must dismiss this appeal.

Finally, we address Father's request that this Court order Mother to pay his reasonable attorney's fees for being forced to defend against what he contends is a frivolous appeal. Father's request is respectfully denied.

## IV. CONCLUSION

Because this appeal was made from an order that was not final, this Court is without subject matter jurisdiction to hear this claim. Accordingly, this appeal is dismissed. Costs are taxed to the appellant, Rhonda Lawson, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE