IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 1, 2022

## MARGARET KATHRYN YOUNG v. LARRY JOE YOUNG

**Appeal from the Circuit Court for Shelby County**
**No. CT-1421-21     James F. Russell, Judge**

_____

### No. W2022-01031-COA-T10B-CV
_____

The petitioner seeks accelerated interlocutory review of a trial judge's recusal under Tennessee Supreme Court Rule 10B or, alternatively, a common law *writ of certiorari*. Such review is beyond the scope of Rule 10B. And a judge's recusal may not be reviewed by a writ of certiorari. So we dismiss the appeal.

**Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right; Appeal Dismissed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and THOMAS R. FRIERSON II, J., joined.

Larry Rice and Erin O'Dea, Memphis, Tennessee, for the appellant, Margaret Kathryn Young.

Robert L.J. Spence, Jr., Memphis, Tennessee, for the appellee, Larry Joe Young.

### OPINION

### I.

In April of last year, Margaret Kathryn Young filed for divorce from her husband of 35 years, Larry Joe Young. In doing so, Ms. Young challenged the validity of an antenuptial agreement that she had signed the day before their marriage. At her request, the circuit court bifurcated the proceedings and set a separate hearing on the validity of the agreement for July 25 of this year.

As Ms. Young describes the events, the hearing on the antenuptial agreement proceeded with the parties presenting opening statements and Mr. Young closing his proof

after calling two witnesses. *See Randolph v. Randolph*, 937 S.W.2d 815, 821 (Tenn. 1996) (holding that the proponent of the agreement has the burden of proof). Ms. Young intended to offer only her own testimony in her case-in-chief. The day concluded with her testimony on direct examination.

The next day began at approximately 10:30 a.m. with cross-examination of Ms. Young by Mr. Young's counsel. At approximately 2:00 p.m., the judge asked the parties and all others to leave the courtroom in order to address the attorneys. When the break was taken, Ms. Young was being cross-examined on a child custody petition that her first husband filed shortly after Ms. Young's marriage to Mr. Young. The judge advised the attorneys that an attorney at the judge's former law firm filed the first husband's custody petition. The judge had been a partner in the firm at the time. And the judge's office at his former firm was next to the office of the attorney representing the first husband. The judge then stated that his former firm's involvement in the custody case would "have no bearing or effect upon my ability to serve impartially in this case."

Although stating his belief that he could act impartially, the judge thought the attorneys were obligated "to visit with the clients and inform them of the disclosure that's been made and [to] discuss with them whether or not [he] should remain on th[e] case under the circumstances." Before visiting with his client, Ms. Young's attorney asked the judge if he would have any memory of a case that occurred thirty-seven years ago. The judge responded "not much." Ms. Young's attorney then asked if the judge had any memory of Ms. Young's first husband or of working on the child custody matter. The judge replied, "Not that comes to mind." But the judge could not rule out the possibility that he might have worked on the case in some capacity.

After a break was taken so that the attorneys could confer with their clients, Mr. Young requested the judge's recusal. He based the request on the fact that the judge might have been involved in the child custody proceeding between Ms. Young and her first husband. Mr. Young's counsel explained that he was concerned that Ms. Young might later complain that the judge should have recused himself. In counsel's words,

> And I'm not so much worried about our side. I'm worried about this side complaining. [Ms. Young's counsel] doesn't have to be the lawyer. His client can complain that [her lawyer] made a poor decision. So that's what I'm looking at. I'm looking at finality. I don't want anybody to be able to come back one day and say that the judge should have recused himself, that my lawyer made a bad call, his bad call prejudiced my rights.

Ms. Young opposed recusal. She argued that the filing of the child custody petition was irrelevant to the issue before the court—the validity of the antenuptial agreement. And a decades-old representation by a former law partner would not cause a person of ordinary prudence in the judge's position to question his impartiality. Ms. Young also submitted

2

that it would be inappropriate for the judge to recuse himself at this stage of the proceedings. The hearing was nearly concluded. Once she had finished testifying, the parties could make closing arguments, and the judge could make his decision. Counsel emphasized the age of his client and the adverse impact of a delay resulting from the judge's recusal:

> I need you to have the courage to complete this trial. I've got a 73-year-old lady on disability whose husband pushed her and deprived her to the point where she's had to go through bankruptcy. And without a determination on this issue that we have been struggling tooth and nail to get her for many, many months, she can't get relief.

To allay any concern that Ms. Young might later object to the judge hearing the case, her counsel asked her if she would waive any potential conflict. She agreed to do so after confirming for the record that she had been advised of the judge's "possible conflict" and that she was present for the arguments of counsel. But opposing counsel was not satisfied. The exchange reminded him "of the issues we're litigating in this case and whether or not it's an informed decision."

After taking another recess to consider the arguments, the judge stated that he would recuse. He reiterated "that my ability to serve fairly and impartially in this case would not be affected at all by this turn of events that has come to light vis-à-vis my former law firm." Yet he concluded he should recuse "and allow the case to be transferred to someone else who would not be subject to criticism regardless of the outcome."

Ms. Young's counsel stated he would seek accelerated review of the judge's decision under Tennessee Supreme Court Rule 10B. And he told the judge, "You have a duty to hear this case, and we believe the Court of Appeals will affirm that." The judge responded, "I can understand and appreciate that."

**II.**

A.

As promised, within days, Ms. Young filed her "Petition for Expedited Recusal Appeal Pursuant to Tenn. Sup. Ct. R. 10B, or in the Alternative for Common Law *Writ of Certiorari* for Review of the Trial Court's Improper Recusal." Appended to the petition are a partial transcript from the hearing and the petition to change custody. No order of recusal was provided.

Ms. Young "ask[s] this Court to order the Trial Judge to resume his duty as the judge in this case, to complete the hearing on the validity of the parties' *Antenuptial Agreement*, and to issue a ruling and enter an order before he retires on August 31, 2022." She submits

3

that the recused judge has an ethical responsibility to decide her case, which authorizes the relief she requests. Under the Tennessee Code of Judicial Conduct, a judge must "hear and decide matters assigned to the judge, except when disqualification is required by [Rule of Judicial Conduct] 2.11 or other law." TENN. SUP. CT. R. 10, RJC 2.7. Here, Ms. Young argues that there are no reasons justifying disqualification. A judge's impartiality might reasonably be questioned if the judge "was associated with a lawyer who participated substantially as a lawyer in the matter [in controversy] during such association." *Id.* RJC 2.11(A)(6)(a). But the representation of the recused judge's former law partner was wholly unrelated to the antenuptial agreement.

As for the need for such extraordinary relief, in her petition and accompanying "motion for expedited decision," Ms. Young explains that the divorce has been pending for over a year. Although she has sought a determination of the validity of the antenuptial agreement, "the hearings have been repeatedly continued, through the request of [Mr. Young] or at the insistence of the Trial Court." Meanwhile, she receives $1,000 per month in social security disability and has been forced to file for bankruptcy relief. And she cannot obtain pendente lite relief because of the antenuptial agreement.

If a new judge is assigned, both parties "will be forced to prepare again for trial, and pay for that preparation, again." Ms. Young states that she lacks the means to pay for that preparation. Nor can she afford to wait any longer to seek pendente lite relief.

Beyond her financial distress, Ms. Young worries about the parties' health and the prospect that one of them, particularly her husband, may die before a new hearing can be held. She is seventy-two, and Mr. Young is eighty-three years old. If her husband passes away before a new hearing, the validity of the antenuptial agreement would be an issue that still impacts his estate. But the recused judge, as Ms. Young explains, "would be the sole trier-of-fact with the ability to make a credibility finding as to the deceased's testimony."

The recusal, because of its timing, also means a greater potential delay than ordinary. The recusal occurred the week before judicial elections. Due to the elections, Ms. Young complains that "many of the courts are not currently setting hearings or will find themselves with new judges on September 1, 2022." *See* Tenn. Code Ann. § 8-18-104 (2016). So "[i]t will be some time before a hearing can be scheduled before the new judges, as they will be closing their practices and preparing for their role."

## B.

A judge's recusal can burden the parties to the case. And, in some circumstances, a recusal may even "bring public disfavor to the court and to the judge personally." TENN. SUP. CT. R. 10, RJC 2.7 cmt. 1. Despite those dangers, the options for seeking review of

4

such decisions during the course of litigation are limited.[1]  A party is generally entitled to an appeal as of right only after the trial court has entered a final judgment that resolves all the claims between all the parties, leaving nothing else for the trial court to do.  TENN. R. APP. P. 3(a); *In re Est. of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003); *State ex rel. McAllister v. Goode*, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997).  Rule 10B of the Rules of the Supreme Court of Tennessee creates an exception to the general rule.  It offers a party "an accelerated interlocutory appeal as of right" from determinations of whether a judge should preside over a case.  TENN. SUP. CT. R. 10B, § 2.01.  But that exception is limited to "an order denying a motion for the judge's disqualification or recusal or for determination of constitutional or statutory incompetence."  *Id.*  Because this appeal is from a grant of a motion for recusal, Rule 10B is not applicable.

Recognizing the limits of Rule 10B, Ms. Young alternatively requests review under the common law *writ of certiorari*.  Tennessee Code Annotated § 27-8-101 "detail[s] how parties may petition the higher courts for a common-law writ of certiorari and when review may be granted."  *State v. Lane*, 254 S.W.3d 349, 354 (Tenn. 2008).  The writ may be granted if an inferior tribunal has exceeded its jurisdiction or is acting illegally.  Tenn. Code Ann. § 27-8-101 (2017).  But there must be "no other plain, speedy, or adequate remedy."  *Id.*  The writ "does not apply to actions governed by the Tennessee Rules of Appellate Procedure."  *Id.*  So the writ is not an alternative "when an express provision for an appeal is available."  *State v. Hartwell*, 124 S.W.3d 629, 631 (Tenn. Crim. App. 2003); *see Clark v. Metro. Gov't of Nashville & Davidson Cnty.*, 827 S.W.2d 312, 316 (Tenn. Ct. App. 1991) (reasoning that the writ "does not take the place of appeal").

Ms. Young acknowledges that she could have sought appeal by permission under Tennessee Rule of Appellate Procedure 9 or 10.  She did not because "the time it would take to engage in the process would expire before the [recused] [j]udge retires."  But, given that Rules 9 and 10 expressly provide for interlocutory appeals, she had other remedies.  *See* TENN. R. APP. P. 9, 10.  Even if the timing of the judge's retirement made seeking permission to appeal from the trial court impossible, Ms. Young could have sought an extraordinary appeal from this Court.  *See* TENN. R. APP. P. 10.  Because review was available under the Tennessee Rules of Appellate Procedure, review was not available by common law *writ of certiorari*.  *See* Tenn. Code Ann. § 27-8-101; *cf. In re Lucas H.*, 634 S.W.3d 1, 9 (Tenn. Ct. App. 2021) (allowing the writ where there was "no other existing avenue of appeal" after the trial court denied a party's Rule 9 motion and this Court determined that review could not be sought under Rule 10).

---

[1] With some notable exceptions, federal "courts appear to prefer review of recusal motions after the final judgment."  *See* Wesley Kobylak, Annotation, *Review of Federal Judge's Grant or Denial of Motion to Recuse*, 64 A.L.R. FED. 433, 438 (1983).  But, "while interlocutory appeal is generally not available in the context of recusal motions, the rare cases in which it has been granted are uniformly where the recusal has been granted."  *Id.* at 439.

## III.

Review of a trial judge's recusal is not available under either Tennessee Supreme Court Rule 10B or a common law *writ of certiorari*.  So we dismiss the appeal.

_s/ W. Neal McBrayer_
W. NEAL MCBRAYER, JUDGE