IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 13, 2026 Session



**HILL BOREN PROPERTIES, ET AL. v. RICKY LEE BOREN, ET AL.**

**Appeal from the Circuit Court for Madison County**
No. C-17-321      Robert E. Lee Davies, Judge
_____

**No. W2025-00675-COA-R3-CV**
_____

The appellants seek to challenge the settlement agreement by which the action was dismissed as well as the trial court's summary judgment rulings entered earlier in the litigation.  We dismiss for lack of jurisdiction.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed; Case Remanded**

JOHN W. MCCLARTY, P.J., E.S., delivered the opinion of the court, in which CARMA DENNIS MCGEE and VALERIE L. SMITH, JJ., joined.

Tamara L. Hill, Jackson, Tennessee, pro se appellant.

T. Robert Hill, Jackson, Tennessee, pro se appellant.

T. Robert Hill, Jackson, Tennessee, for the appellant, Hill Boren Properties.

Teresa Anne Luna and Lewis Latane Cobb, Jackson, Tennessee for the appellee, Ricky Lee Boren.

**OPINION**

**I.      BACKGROUND**

On November 29, 2017, the general partnership Hill Boren Properties and its majority partner, appellant Mr. T. Robert Hill, Esq., filed a "Complaint for Dissolution of Partnership and Damages" against appellee Ricky Lee Boren, Esq., in the Circuit Court for Madison County, Tennessee ("trial court").  Mr. Boren was a 32% partner in Hill Boren Properties ("the partnership").  The partnership and Mr. Hill alleged that the partnership owned a professional office building, two adjoining parcels, and a house which was then

used as a file storage facility by Hill Boren, P.C. They further alleged that, while he was a partner, Mr. Boren "breached his duty of loyalty, good faith and fair dealing to [the partnership and to majority partner Mr. Hill] causing significant economic damage to [them] including the loss of the primary tenant of the office building" and that Mr. Boren "engaged in wrongful conduct that adversely and materially affected the partnership business." In early 2018, Mr. Boren answered and filed a counterclaim against Mr. Hill.

On August 23, 2019, Mr. Boren amended the counterclaims against Mr. Hill to allege that Mr. Hill, individually and on the partnership's behalf, breached his fiduciary duty and duty of good faith by "allowing squatters to use the building for business purposes," failing to collect rent, insurance, utility, and maintenance payments from squatter tenants, failing to distribute rental income, failing to maintain the partnership's properties, "failing to pay the partnership rent for running his own law practice out of the building," and refusing Mr. Boren access to the premises owned by the partnership from at least January 1, 2017, to August 12, 2019. Mr. Boren also filed a third-party complaint against appellant Mrs. Tamara Hill, Esq., and her LLC, T and T Home Rentals. Mr. Boren alleged that Mrs. Hill operated her own law practice on premises owned by the partnership without paying rent, insurance, utilities, or maintenance costs, and that she failed to maintain and greatly damaged the premises. Mr. Boren alleged the same against T and T Home Rentals, LLC. Mr. Boren further alleged that both Mrs. Hill and the LLC conspired with her husband Mr. Hill to breach his fiduciary duties to the partnership and to commit fraud. With the trial court's permission, Mr. Boren filed a second amended answer and countercomplaint against Mr. Hill, Mrs. Hill, and the LLC on February 4, 2020. Two days later, Mrs. Hill and the LLC moved for dismissal of Mr. Boren's claims against them. The trial court denied that motion but dismissed "the conspiracy claim based upon fraud" that was alleged against Mrs. Hill and the LLC.

On April 14, 2020, Mrs. Hill and the LLC moved for summary judgment. By order entered September 24, 2020, the trial court found that the LLC used the partnership's building as its principal place of business and the post office box as its mailing address. The court found "[t]here really was no benefit which [the LLC] received that was any different when Mr. Boren was working as an attorney for [Hill Boren, P.C.]" and that "it is hard to comprehend what amount of rent should be paid by [the LLC] just because Mrs. Hill kept some documents in a file cabinet." Therefore, the trial court determined that "any liability of [the LLC] falls within the maxim of *de minimus non curat lex*, the law cares not for trifles," and that any such liability would be too insignificant to consider when deciding the case. Accordingly, the trial court granted summary judgment in favor of the LLC but denied Mrs. Hill's motion for summary judgment.

Mr. Hill moved for summary judgment on his complaint against Mr. Boren and for summary judgment on Mr. Boren's counterclaims against him. The trial court denied the motion by order entered February 11, 2021.

Mr. Boren also moved for summary judgment on December 18, 2020, arguing that the undisputed facts negated an essential element of Mr. Hill's and the partnership's claim that Mr. Boren breached his fiduciary duty to the partnership. By separate order entered February 11, 2021, the trial court denied Mr. Boren's motion for summary judgment. In the February 11 order, the trial court referenced the litigation pending between the parties in the Chancery Court for Madison County, case number 75056, *Ricky L. Boren, et al. v. Hill Boren, P.C., et al.*, a case which spawned many appeals to this Court beginning in 2017. The trial court stayed the proceedings "until the parties have exhausted their remedies in the Appellate Court in the [75056] chancery case." By order entered October 13, 2023, the Tennessee Supreme Court denied Mr. Hill and Hill Boren, P.C.'s application for permission to appeal in case number 75056, marking the end of its appellate process. On January 22, 2024, Mr. Boren filed his second motion for summary judgment in the instant case, arguing equitable estoppel and collateral estoppel. Following a hearing, and by order entered May 21, 2024, the trial court found that the doctrine of collateral estoppel did not apply. The court thoroughly discussed the long history of this case and the results of the Chancery Court case. The trial court determined that, under the applicable doctrine of equitable estoppel, Mr. Hill's intentional conduct precluded him and the partnership from asserting a claim for breach of the duty of loyalty against Mr. Boren "for purchasing another building for his law practice after he was kicked out of [Hill Boren, P.C.]." Accordingly, the court granted Mr. Boren's second motion for summary judgment.

On August 10, 2022, Mrs. Hill moved for summary judgment on the allegations of failure to pay rent. By order entered August 15, 2022, the trial court found that said motion was not ripe to be heard because, at that point, the proceedings were stayed. On August 27, 2024, Mrs. Hill and Mr. Hill filed a joint "renewed motion for summary judgment" on Mr. Boren's claims against them for failure to pay rent and breach of fiduciary duty. It appears this motion was not set for an immediate hearing.

Pre-trial deadlines and the October 21, 2024 jury trial were looming, so in September 2024, the parties worked toward settlement. Mrs. Hill negotiated on behalf of herself, Mr. Hill, and the partnership. The appellate record contains the parties' written negotiations over email, summarized below:

September 23, 2024: Mrs. Hill emailed the initial offer of settlement. The offer included that Mr. Boren would be responsible for year 2024 property taxes on certain lots of land that were offered in settlement.

September 25, 2024: At 3:39 p.m., Mr. Boren's counsel, Teresa Luna, responded to Mr. and Mrs. Hill that she was "counter[ing] [the] offer to settle just the property case." Mr. Boren's counteroffer did not include any offer to be responsible for the property taxes on the lots offered in settlement. At 4:49 p.m., Mrs. Hill rejected Mr. Boren's counteroffer by responding, "It is not acceptable to me. It is my dream you are destroying. I will not agree to

- 3 -

allow Ricky Boren to cherry pick the lots." Mrs. Hill's rejection and counteroffer did not include any language about property taxes on the lots. For the remainder of this date and much of the next day, other counteroffers passed between the parties, none of which mentioned property taxes.

September 26, 2024: Mr. Boren's counsel confirmed the agreement the parties had finally reached via email at 3:12 p.m. It read:

> Mr. and Mrs. Hill:
>
> Mr. Boren is agreeable to settling the Properties case[1] and substituting the 2 lots you suggested under the following terms:
>
> 1. You will transfer by deed the following properties before October 8th 2024: 124 Jabez, 132 Jabez, 140 Jabez, 297 Chronicles, and 305 Chronicles.
>
> 2. The entire Properties case will be dismissed.
>
> 3. Mr. Hill will agree not to appeal the previous dismissal of his claims in this case that were lost on summary judgment.
>
> 4. Mr. Hill will agree to the dissolution of the Partnership.
>
> 5. Mr. Hill will agree not to contest the $59,000 in expenses Mr. Boren has previously applied to the Court to receive. The Court said it was going to wait until the end of the case to decide this issue. But, if you will remember, there was an agreed order where Mr. Boren and Mr. Hill agreed that Boren would be responsible for the upkeep of the property until it was sold and that Boren would be reimbursed from the proceeds of the sale.
>
> If all of the above are ok with both of you and we get email confirmation from both of you, I think we have a deal. I appreciate your willingness to work together with me to get this settled.
>
> Teresa

---

[1] The parties have referred to the instant action, Madison County Circuit Court number C-17-321, as "the Properties case."

- 4 -

September 26, 2024: At 3:15 p.m., Mrs. Hill responded to Mr. Boren's counsel, "Yes, I agree. Will your office be preparing the deeds? I will need to see the settlement agreement documents of course. I am telling Mr. Hill to email you as well." A few minutes later, Mr. Hill also accepted the settlement agreement, writing to Mr. Boren's counsel, "If there are no glitches in the settlement documents, I'm in agreement and we have a settlement of the Hill Boren Properties #C-17-321 only."

On September 26, 2024 at 3:20 p.m., Mrs. Hill emailed the trial court to advise "that this case has been settled." Mrs. Hill noted that she and Mr. Boren's counsel "were able to work out an agreement that satisfied all parties." Mrs. Hill stated, "We will be working on an order of dismissal with prejudice." The parties held a conference call with the trial court on October 8, 2024, the transcript of which is in the appellate record. During that call, the parties again indicated to the trial court that the case had been settled and discussed the terms of their settlement with the court, including the five lots offered in settlement, dismissal of the action, dissolution of the partnership, and payment of Mr. Boren's expenses.

On October 10, 2024, Mr. Hill, Mrs. Hill, and the partnership filed a joint motion asking the trial court "to enforce the settlement agreement as supported by the emails between the parties." They asserted that Mr. Boren was refusing to honor the settlement agreement by insisting that Mrs. Hill pay the 2024 property taxes on and "sign misleading deeds to" the lots offered in settlement. The same day, Mr. Boren filed his response to the motion to enforce the settlement agreement. Mr. Boren attached to his response the September 26, 2024 email that the Hills' and the partnership's motion had referenced as the "settlement agreement" they wanted the trial court to enforce. Mr. Boren argued that nothing in the settlement agreement indicated he would pay the property taxes but stated that he would be willing to pay his pro rata share of those property taxes "for the sake of settlement." Mr. Boren requested the trial court to enforce the agreement entered into by the parties.

On November 1, 2024, the trial court entered an order on the Hills' and the partnership's motion to enforce the settlement agreement. The court found that the trial of the case had been set for October 21, 2024, but that it "removed the case from the trial docket based upon the representations of the parties." The court then reviewed each of the emailed offers and counteroffers made by the parties and concluded that Mr. Boren's counsel's September 26, 2024, 3:12 p.m. email was "a contract between the parties to settle the Hill Boren Properties case." The trial court further found:

> The last offer made by [Mr. Boren's counsel] on September 26, 2024, which was accepted by both Mr. and Mrs. Hill, did not contain a provision regarding the property taxes. Requiring one party to be solely responsible for the entire year of property taxes is a unique and unusual term that would have to be

- 5 -

expressly agreed upon. That did not occur here. Accordingly, the Court will impose the normal and usual course of dealing when real estate is exchanged which is that each party will be responsible for their pro rata share of the property taxes based upon ownership at the time of closing.

After the trial court entered its November 1, 2024 order on the terms of the settlement, Mr. Boren was unable to obtain an executed settlement agreement or executed deeds from Mr. and Mrs. Hill. So, on December 18, 2024, Mr. Boren filed his own motion to enforce the settlement agreement. In it, he stated that the Hills were being nonresponsive, were refusing to sign the formal memorialization of the settlement agreement as referenced in the trial court's November 1, 2024 order, and were refusing to execute the corresponding deeds. On March 18, 2025, Mr. and Mrs. Hill responded to Mr. Boren's motion to enforce the settlement agreement. They requested "to invalidate the proposed settlement of this case under the theory of fraud in the inducement," argued that there had been no meeting of the minds, and requested "an independent trier of fact to determine this issue." The Hills alleged that the trial court acted as mediator and chose sides despite the clear language of the settlement negotiations. Their response focused on the payment of 2024 property taxes on the lots offered in settlement, calculating those taxes to be $648.75.

Mr. Boren's motion to enforce the settlement agreement proceeded to a hearing on March 20, 2025. By then, Mrs. Hill had paid the 2024 property taxes on the five lots which were part of the settlement because she still owned them. Mrs. Hill acknowledged on the record that she settled this case because she was "exhausted." At the hearing, the Hills indicated they were still aggrieved by the property tax apportionment, so Mr. Boren's counsel informed the court that Mr. Boren would pay all of year 2025 property taxes on the five lots so the parties could get to the finish line. Mr. Boren's counsel advised the trial court, "We have the warranty deeds drafted in accordance with your [November 1, 2024] order, and we have the settlement agreement drafted in accordance with your order, and we have copies of it here today." The trial court noted that the terms of the settlement set forth in the September 26, 2024, 3:12 p.m. email did not specify what type of deed would be executed to convey the properties subject to the settlement. The Hills stated that they preferred a quitclaim deed instead of a warranty deed, so Mr. Boren's counsel agreed to that on the record. Presciently, Mr. Boren's counsel advised that he would seek the court's assistance under Tennessee Rule of Civil Procedure 70[2] if the Hills "refuse to sign the

---

[2] The Rule provides:

A decree for specific performance shall, if so ordered by the court, operate as a deed to convey land located in this state, or, in appropriate cases, other property, without any conveyance being executed by the vendor. In the case of land a copy of such decree certified by the clerk shall be recorded in the register's office in the county where the land lies and shall stand in the place of a deed. In all other cases where a judgment or decree directs a party to execute a conveyance of land or other property or to deliver deeds or other

- 6 -

deeds." At the end of the hearing, the trial court stated that it would sign orders pertaining to ancillary matters such as dissolving the partnership in addition to the order on the hearing about enforcing the settlement agreement. The trial court specifically stated that the March 20, 2025 order "will be the final order for purposes of appeal [and] I don't want anybody to be tricked into missing the appeal date. So everybody – everybody – we're all on the same page here."

As anticipated in the hearing, the trial court entered multiple orders on March 20, 2025. The trial court entered its "order of dismissal with prejudice" wherein the court ruled that "all issues in this matter have been resolved" and dismissed the entire action with prejudice. The order of dismissal with prejudice assessed any outstanding costs equally among the parties, was signed by the trial judge and by Mr. Boren's counsel, and included a certificate of counsel that a copy of the order had been served on The Hill Law Firm, Mrs. Hill, and Mr. Hill on March 17, 2025.

On March 20, 2025, the trial court also entered the orders pertaining to ancillary matters, such as dissolving the partnership and the application of a previously granted charging order. In one such order, the court found "[a]ll the parties in this case have notified the Court that they have reached an agreement to resolve the case. As part of this settlement, the parties indicated to the Court that they agreed to allow the Court to proceed with judicially dissolving the Partnership." Accordingly, the court ordered that the partnership be judicially dissolved. The court further ordered that Mr. Boren be reimbursed $59,780.09 from the funds held by the court from the sale of the partnership's property, "as the merits of the case have now been resolved," noting that the Hills did not oppose this.

Weeks passed without the parties executing the deeds or the formal memorialization of their September 2024 settlement. By order entered April 10, 2025, the trial court reiterated the rulings from its November 1, 2024 order. The court ordered Mr. and Mrs. Hill to execute a settlement agreement containing the terms of the settlement as stated in the September 26, 2024, 3:12 p.m. email and to execute deeds transferring the five properties. The court warned, "[f]ailure to do so may result in a contempt of this order."

---

documents or to perform any other specific act and the party fails to comply within the time specified (or within a reasonable time if no time is specified), the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court, and the act when so done has like effect as if done by the party. The court may also in proper cases adjudge the party in contempt. In lieu of directing a conveyance of land or personal property, the court may enter a decree divesting the title of any party and vesting it in others, and such decree has the effect of a conveyance executed in due form of law. When any order or judgment is for the delivery of possession, the party in whose favor it is entered is entitled to a writ of execution or possession upon application to the clerk.

Tenn. R. Civ. P. 70.

The April 10 order was designated a final judgment under Rule 54.02.

On April 15, 2025, Mrs. Hill informed Mr. Boren's counsel that she and Mr. Hill would sign the settlement agreement and quitclaim deed transferring the five lots if each document contained language that it "was being signed under court order with threat of contempt, not [the] free will of either of us." On April 17, 2025, in another effort to compromise, Mr. Boren's counsel emailed the Hills a quitclaim deed wherein the phrase "as their free act and deed" was removed from the attestation. Later that day, the Hills filed a "notice of filing court ordered settlement documents and quitclaim deeds." The deed the Hills executed and attached to the notice contained the language: "pursuant to Court order, under threat of contempt and subject to appeal;" and "who, acknowledged that they executed the within instrument for the purposes therein contained, for $0.00 consideration, pursuant to Court order, under threat of contempt and pending appeal." This prompted Mr. Boren to move the trial court to appoint the Clerk of the Circuit Court to execute the quitclaim deed on behalf of the Hills, pursuant to Rule 70. Mr. Boren argued that the language the Hills had placed in the deed would taint it and create a cloud on the title of the five properties. Mr. Boren requested sanctions in the form of attorney fees incurred since the September 2024 settlement and further requested that the Hills be found in contempt.

On May 8, 2025, Mr. Hill, the partnership, and Mrs. Hill filed their notice of appeal in this Court. Following a June hearing, and by order entered June 20, 2025, the trial court reiterated its previous finding that the parties' emails formed a valid, enforceable settlement agreement and overruled the provision contained in its April 10, 2025 order "requiring the Hills to execute an additional settlement agreement." The trial court ordered the Clerk to execute the quitclaim deed on the five properties, denied Mr. Boren's request for sanctions, and did not hold the Hills in contempt. Finally, on June 23, 2025, the Clerk of the Madison County Circuit Court executed and filed the quitclaim deed.

## II. ISSUES

Appellants T. Robert Hill and Hill Boren Properties raise the following issues on appeal:

A.      Whether the trial court erred in enforcing a settlement agreement when there was no meeting of the minds regarding material terms, specifically the payment of property taxes on transferred lots.

B.      Whether the trial court erred in entering a consent judgment when Mr. Hill only gave conditional consent and communicated distinct material disagreements to the court before entry of the judgment.

- 8 -

C.     Whether the trial court erred in granting defendant Mr. Boren summary judgment in light of the undisputed facts and law regarding the fiduciary duty of a general partner under T.R.C.P. 56 and well-established Tennessee case law.

Appellant Tamara Hill raises the following issues on appeal:

D.     Whether the trial court erred in enforcing a settlement agreement when there was no meeting of the minds regarding material terms, specifically the payment of property taxes and the type of deed to be executed on transferred lots.

E.     Whether the trial court erred in entering a consent judgment when Mrs. Hill withdrew her consent and communicated material disagreements to the court before the court entered the order.

F.     Whether the trial court erred in denying Mrs. Hill's motion for summary judgment on conspiracy claims when undisputed facts showed she had no legal duty to pay partnership rent, the statute of limitations had run, Defendant had no standing to sue Mrs. Hill for perceived wrongs to the partnership, and Defendant admitted that Mrs. Hill was allowed to occupy the premises "virtually rent-free."

In the posture of Appellee, Ricky Lee Boren raises these additional issues on appeal:

G.     Whether this Court has subject matter jurisdiction over the appeal filed by Mrs. Hill, Mr. Hill, and Hill Boren Properties because the appeal was filed 49 days after the trial court entered its March 20, 2025, "Order of Dismissal With Prejudice."

H.     Whether Mr. Boren is entitled to damages under Tennessee Code Annotated section 27-1-122 for Mrs. Hill's, Mr. Hill's, and Hill Boren Properties' frivolous appeal.

### III.     STANDARD OF REVIEW

We review a non-jury case de novo upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). This presumption of correctness applies only to findings of fact and not to conclusions of law. *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008);

*Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Determining whether subject matter jurisdiction exists is a question of law, so our standard of review is de novo, without a presumption of correctness. *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000).

## IV. DISCUSSION

Mr. Boren argues that this Court lacks subject matter jurisdiction over the instant appeal because the appellants filed their notice of appeal on May 8, 2025, forty-nine days after the trial court entered its order of dismissal with prejudice. Mr. Hill, Mrs. Hill, and the partnership do not address this argument in their briefing.

"Unless an appeal from an interlocutory order is provided by the rules or by statute, appellate courts have jurisdiction over final judgments only." *Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 559 (Tenn. 1990) (quoting *Aetna Cas. & Sur. Co. v. Miller*, 491 S.W.2d 85 (Tenn. 1973)); *see also* Tenn. R. App. P. 3(a).[3] "A final judgment is one that resolves all the issues in the case, 'leaving nothing else for the trial court to do.'" *In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003) (quoting *State ex rel. McAllister v. Goode*, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997)). An order that does not adjudicate all the claims, rights, or liabilities between all the parties is not final. *Id*.

Generally, a notice of appeal must be filed within thirty days after the date of entry of the final judgment. *See* Tenn. R. App. P. 4. This requirement may not be waived. Tenn. R. App. P. 2; *Am. Steinwinter Inv. Grp. v. Am. Steinwinter, Inc.*, 964 S.W.2d 569, 571 (Tenn. Ct. App. 1997). Nor can this Court extend the time for filing a notice of appeal. *Jefferson v. Pneumo Services Corp.*, 699 S.W.2d 181, 184 (Tenn. Ct. App. 1985). "In civil cases, the failure to timely file a notice of appeal deprives the appellate court of jurisdiction to hear the appeal." *Arfken & Assocs., P.A. v. Simpson Bridge Co.*, 85 S.W.3d 789, 791 (Tenn. Ct. App. 2002) (citations omitted). Indeed, "[i]f the notice of appeal is not timely filed, the appellate court is required to dismiss the appeal." *Id*. Certain motions toll the

---

[3] Tennessee Rule of Appellate Procedure 3(a) states:

In civil actions every final judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Appeals is appealable as of right. Except as otherwise permitted in Rule 9 and in Rule 54.02 Tennessee Rules of Civil Procedure, if multiple parties or multiple claims for relief are involved in an action, any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties.

Tenn. R. App. P. 3(a).

time a litigant has to file a notice of appeal to this Court. *See* Tenn. R. App. P. 4(b).[4] No such motions were filed in this case.

Here, on March 20, 2025, the trial court heard Mr. Boren's motion to enforce the settlement agreement, the Hills' objections to the property tax and form of deed issues which were resolved by Mr. Boren's concessions, and the Hills' arguments in favor of invalidating the settlement. After ruling against invalidating the settlement agreement, the trial court entered its "order of dismissal with prejudice" wherein the court ruled that "all issues in this matter have been resolved." On March 20, 2025, the court dismissed the entire action with prejudice, just as the parties had agreed to do in their settlement agreement which specified, "The entire Properties case will be dismissed." Before entering the March 20, 2025, order, the trial court reminded the parties that it would "be the final order for purposes of appeal." Pursuant to Tennessee Rule of Civil Procedure 58, the order of dismissal with prejudice assessed any outstanding costs equally among the parties, was signed by the trial judge and by Mr. Boren's counsel, and included a certificate of counsel that a copy of the order had been served on The Hill Law Firm, Mrs. Hill, and Mr. Hill on March 17, 2025. Because the March 20, 2025 order of dismissal with prejudice disposed of all of the claims of all parties, it operates as the final judgment which triggered the thirty-day time limit for filing a notice of appeal. Substantively, there was nothing else for the trial court to decide after that. *See Poff v. Poff*, No. 01-A-01-9301-CV00024, 1993 WL 73897, at *1 (Tenn. Ct. App. Mar. 17, 1993) ("An order resolves all claims if it leaves nothing else for the trial court to do with regard to the original proceeding.").

We note that all of the issues the appellants now raise on appeal were conclusively decided by the March 20 order, and the appellants had thirty days from entry of that order in which to file a notice of appeal in this Court or file in the trial court one of the motions provided by the rules which serve to toll the time to appeal. They did not do so. Their notice of appeal was filed May 8, 2025, outside the thirty-day time limit. The trial court's entry of subsequent orders after March 20, 2025, ordering Mr. and Mrs. Hill to execute a settlement document containing the terms of the settlement as stated in the September 26, 2024, 3:12 p.m. email and to execute deeds transferring the five properties, does not change the analysis. Those later orders did not "affect[] any of the parties' substantive rights and

---

[4] Tennessee Rule of Appellate Procedure 4(b) provides:

> In a civil action, if a timely motion under the Tennessee Rules of Civil Procedure is filed in the trial court by any party: (1) under Rule 50.02 for judgment in accordance with a motion for a directed verdict; (2) under Rule 52.02 to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (3) under Rule 59.07 for a new trial; (4) under Rule 59.04 to alter or amend the judgment; the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion.

Tenn. R. App. P. 4(b).

- 11 -

obligations settled by the first judgment" entered March 20, 2025. *Ball v. McDowell*, 288 S.W.3d 833, 837 (Tenn. 2009). As we determined in *Thompson v. Graham*:

> [C]losing and other tasks are not claims of the parties that the *trial court* must adjudicate; while the settlement agreement may require the parties to finish certain administrative tasks, in the same way that many judgments do, this is not the same as an outstanding claim that the trial court must adjudicate.
>
> . . .
>
> Stated differently, the fact that the parties have outstanding tasks they must complete to comply with the trial court's order does not mean . . . that the trial court has something left to rule on for purposes of finality.

*Thompson v. Graham*, No. E2024-00568-COA-R3-CV, 2025 WL 1591386, at *3–4 (Tenn. Ct. App. June 5, 2025), *perm. app. granted*, No. E2024-00568-SC-R11-CV, 2025 WL 2902334 (Tenn. Oct. 9, 2025). Upon review, we determine that this Court does not have subject matter jurisdiction over this matter because the notice of appeal was not timely filed. Therefore, the appeal must be dismissed.

### *Frivolous Appeal*

Mr. Boren contends that the appellants filed a frivolous appeal, rendering them liable for damages to him on appeal pursuant to Tennessee Code Annotated section 27-1-122, which provides as follows:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122.

The decision whether to award damages for a frivolous appeal rests solely in our discretion. *Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009). Appellate courts exercise their discretion to award fees under this statute "'sparingly so as not to discourage legitimate appeals.'" *Eberbach v. Eberbach*, 535 S.W.3d 467, 475 (Tenn. 2017) (quoting *Whalum v. Marshall*, 224 S.W.3d 169, 181 (Tenn. Ct. App. 2006)). "'Successful litigants should not have to bear the expense and vexation of groundless appeals.'" *Whalum*, 224 S.W.3d at 181 (quoting *Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977)). "A frivolous appeal is one that is 'devoid of merit,' or one in which there is little prospect that it can ever succeed." *Indus. Dev. Bd. v. Hancock*, 901 S.W.2d

382, 385 (Tenn. Ct. App. 1995).

Based on our review of the record, we believe that this appeal was taken for delay. Exercising our discretion, we grant Mr. Boren his attorney fees incurred on appeal, the amount of which the trial court shall determine upon remand.

## V.    CONCLUSION

For the foregoing reasons, we dismiss the appeal.  The case is remanded for such further proceedings as may be necessary and consistent with this opinion, including a determination of reasonable and necessary appellate attorney fees and entry of judgment thereon.  Costs of the appeal are taxed to the appellants, T. Robert Hill, Hill Boren Properties, and Tamara L. Hill.

s/ John W. McClarty
JOHN W. MCCLARTY, JUDGE